652 A.2d 1306

WESTINGHOUSE ELECTRIC CORPORATION,
(R & D Center),

v.

BOARD OF PROPERTY ASSESSMENT, APPEALS
AND REVIEW OF ALLEGHENY COUNTY,

v.

The BOROUGH OF CHURCHILL, Woodland Hills
School District and County of Allegheny.

Appeal of: WESTINGHOUSE ELECTRIC CORPORATION.

The BOROUGH OF CHURCHILL and
Woodland Hills School District,

v.

BOARD OF PROPERTY ASSESSMENT, APPEALS
AND REVIEW OF ALLEGHENY COUNTY,

v.

WESTINGHOUSE ELECTRIC CORPORATION
and County of Allegheny.

Appeal of: The BOROUGH OF CHURCHILL, Woodland
Hills School District and County of Allegheny.

Supreme Court of Pennsylvania.

Argued Sept. 23, 1992.

Resubmitted June 15, 1993.

Decided Jan. 23, 1995.

454 

Philip Baskin, Marvin A. Fein, Frankie Jo Pacilla, Houston Harbaugh, P.C., Pittsburgh, for appellant in No. 79, Appellees Westinghouse Elec. Corp.

Robert W. Goehring, Sol.–Borough of Churchill, Goehring & West, Patrick J. Clair, Sol.—Woodland Hills School Dist.,

Goehring, Rutter & Boehm, Pittsburgh, for appellees in No. 79, appellants in No. 80.

Ira Weiss, Sol.—Allegheny County, Pittsburgh, for appellees in No. 79.

Pat Loughney, Sol.—Bd. of Property Assessment, Appeals and Review of Allegheny County, Pittsburgh, for appellees in No. 79, appellees in No. 80.

Before NIX, C.J., and FLAHERTY, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION

MONTEMURO, Justice: *

These cross-appeals filed by the taxpayer, Westinghouse Electric Corporation (Westinghouse), and three taxing authorities, Borough of Churchill (Churchill), Woodland Hills School District (Woodland Hills), and the County of Allegheny (Allegheny), are from an order of the Commonwealth Court (Doyle, Smith, and Barry, JJ.), which affirmed in part, and reversed and remanded in part an order of the Court of Common Pleas of Allegheny County in a tax assessment appeal filed by Westinghouse. For the reasons set forth herein, we affirm the order of the Commonwealth Court.

The Board of Property Assessment Appeals and Review of Allegheny County (Board) assessed Westinghouse's Research and Development Center property, which is situated in the Borough of Churchill, for the years 1977 through 1981 as follows:

$$1977—\$\ 9,960,000$$
$$1978—\$\ 9,960,000$$
$$1979—\$\ 9,985,000$$
$$1980—\$\ 9,985,000$$
$$1981—\$10,010,000$$

Westinghouse disagreed with the assessments, and filed Appeal No. 5220–900A seeking to have the assessments reduced.

* This matter was reassigned to Justice Montemuro for preparation of the majority opinion.

After a hearing, the Board disposed of the appeal by leaving unchanged the assessments for 1977 through 1979. However, the Board reduced the assessments for 1980 and 1981 to the following amounts:

1980—$ 7,589,000
1981—$ 7,614,000

From that disposition, Westinghouse and the taxing authorities, Churchill and Woodland Hills, each filed an appeal to the Court of Common Pleas of Allegheny County. Those appeals were consolidated for pre-trial proceedings, conciliation, and trial.

For each of the subsequent five years, 1982 through 1986, the Board assessed the Westinghouse property at $7,614,000. Pursuant to section 518.1(b) of the General County Assessment Law, Act of May 22, 1933, as amended, 72 P.S. § 5020-518.1(b), the appeals filed from the Board's assessments for the years 1977 through 1981 acted as automatic appeals for the years 1982 through 1986.

A trial de novo on the consolidated appeals was held in the Court of Common Pleas of Allegheny County. There, the parties challenged the market value assigned to the Westinghouse property for the years 1977 through 1986, and the common level ratio which was applied for the years 1977, 1978, and 1979. The trial court heard testimony pertaining to market value and finding the conflicting testimony offered by experts from both sides to be competent and credible, entered a compromise order setting the fair market value of the Westinghouse property as follows:

1977—$26,000,000
1978—$27,500,000
1979—$28,000,000
1980—$28,000,000
1981—$29,000,000
1982—$29,500,000
1983—$30,500,000
1984—$30,250,000
1985—$31,500,000
1986—$32,000,000

The evidence presented by the parties concerning the common level ratio of assessed value to market value was more inconclusive. First the taxing authority established a prima facie case by presenting the Vice Chairman of the Board of Property Assessment Appeals and Review, who testified that the common level ratio for the period in question had been set by the Board at 50%. The taxpayer's expert then produced rebuttal evidence in the form of studies and numbers extracted from them, while the taxing authority in its turn produced evidence critical of the taxpayer's methodology but without offering alternatives to the numbers, since no independent ratio studies had been performed. After receiving this evidence, the court set the common level ratio for the years 1977 through 1979 at thirty-nine percent. The common level ratio for 1980 through 1986 was not at issue, and remained unchanged at twenty-five percent. The trial court then applied the appropriate common level ratio to the fair market value of the property, and ordered the following assessments:

1977—$10,140,000
1978—$10,725,000
1979—$10,920,000
1980—$ 7,000,000
1981—$ 7,250,000
1982—$ 7,375,000
1983—$ 7,625,500
1984—$ 7,562,000
1985—$ 7,875,000
1986—$ 8,000,000

Motions for post-trial relief were filed by the parties and subsequently denied by the trial court. Each of the parties then appealed to the Commonwealth Court.

On July 25, 1988, the Commonwealth Court, *sua sponte,* quashed the appeals as untimely. *Westinghouse Electric Corp. v. Bd. of Property Assess., Appeals & Review,* 118 Pa.Commw. 152, 544 A.2d 1088 (1988). Upon petition, we granted allocatur in these appeals, and reversed and remanded to the Commonwealth Court for consideration of the appeals on the merits. *In re Appeal of Churchill,* 525 Pa. 80,

575 A.2d 550 (1990). Upon remand, the Commonwealth Court considered the parties' claims, and affirmed the trial court's determination of fair market value for all of the years in question, and the common level ratio of 25% for years 1980 through 1986, to which the parties had stipulated. The Commonwealth Court reversed the trial court's determination of the common level ratio of 39% for the years 1977, 1978 and 1979, and remanded that issue for further consideration. *Westinghouse Electric Corp. v. Bd. of Property Assess., Appeals & Review*, 138 Pa.Commw. 30, 587 A.2d 820 (1991).

. Cross-petitions for allowance of appeal from the order of the Commonwealth Court were filed by the taxpayer and the taxing authorities raising various issues. We granted allocatur to review the following questions: (a) whether the trial court abused its discretion by accepting as credible the testimony of all of the expert witnesses who testified as to fair market value, and by "splitting the difference" between the competing experts' opinions of fair market value; (b) whether the Commonwealth Court in its remand to the trial court on the common level ratio issue should have directed the trial court to accept the ratio put forth by the only expert who gave testimony on this question; (c) whether it was reversible error for the trial court to refuse to order the Board of Assessment to produce a report prepared by an independent appraiser who was hired by the Board and paid for with public funds where that appraiser is unavailable to the taxpayer; and, (d) whether it was error for the Commonwealth Court to reverse the trial court's finding that the common level ratio for the years 1977–79 was 39%, and remand the case to the trial court for further consideration of the common level ratio issue?

■ Our scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by substantial evidence. *Reichard–Coulston, Inc. v. Revenue Appeals Bd.*, 102 Pa.Commw. 227, 517 A.2d 1372 (1986), *alloc. denied*, 517 Pa. 611, 536 A.2d 1335 (1987); *In re Appeal of Duquesne Club*, 92 Pa.Commw. 15, 498 A.2d

459 (1985), *alloc. denied,* 514 Pa. 636, 522 A.2d 1106 (1987), and *alloc. denied,* 514 Pa. 637, 522 A.2d 1106 (1987).

The proceedings in the trial court are de novo and the proper order of proof in cases such as the present one has long been established. The procedure requires that the taxing authority first present its assessment record into evidence. Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails. But once the taxpayer produces sufficient proof to overcome its initially allotted status, the prima facie significance of the Board's assessment figure has served its procedural purpose, and its value as an evidentiary devise is ended. Thereafter, such record, of itself, loses the weight previously accorded to it and may not then influence the court's determination of the assessment's correctness. Of course, the taxpayer still carries the burden of persuading the court of the merits of his appeal, but that burden is not increased by the presence of the assessment record in evidence.

Of course, the taxing authority always has the right to rebut the owner's evidence and in such a case the weight to be given to all the evidence is always for the court to determine.

*Deitch Co. v. Bd. of Property Assess., Appeals & Review,* 417 Pa. 213, 221–2, 209 A.2d 397, 402 (1965) (citations and footnote omitted).

With this standard in mind, we turn to the parties' claims.

■ Westinghouse first argues that had the Commonwealth Court conducted a meaningful review of the lower court record, it would have concluded that the trial court abused its discretion both by finding credible all of the experts who testified as to market value, and by "splitting the difference" between the fair market value presented by the taxing authorities' experts and the fair market value presented by the

taxpayer's experts. For the reasons set forth below, we reject Westinghouse's assertion.

After the taxing authorities presented the assessment record into evidence, thus establishing a prima facie case, *Deitch Co.*, 417 Pa. at 221–2, 209 A.2d at 402, Westinghouse presented expert testimony as to the market value of its property for years 1977 through 1986. Westinghouse's lead expert testified that he used the market approach, comparable sales approach and income approach in arriving at his opinion of fair market value. The taxing authorities countered Westinghouse's expert by presenting their own expert who testified as to his opinion of the market value of the subject premises for the years in question. The taxing authorities' expert testified that he used the income approach, market approach and cost approach in arriving at fair market value. Predictably, there was considerable difference between the respective opinions of the experts.[1]

Westinghouse also presented market value evidence through the testimony of various other experts, as did the taxing authorities.

After hearing all testimony and evidence presented by the parties, and the arguments of counsel, the trial court made an oral adjudication pursuant to Pa.R.C.P. 1517, which was transcribed and filed as part of the record. In its adjudication, the trial court found all of the expert testimony competent, and noted that the real question involved was the weight and

1. A comparison of their respective opinions and the difference between them is as follows:

| | WESTINGHOUSE | TAXING AUTHORITIES | DIFFERENCE |
|---|---|---|---|
| 1977– | $19,500,000 | $34,000,000 | $14,500,000 |
| 1978– | 20,000,000 | 36,000,000 | 16,000,000 |
| 1979– | 19,000,000 | 38,000,000 | 19,000,000 |
| 1980– | 19,000,000 | 38,000,000 | 19,000,000 |
| 1981– | 19,000,000 | 40,000,000 | 21,000,000 |
| 1982– | 19,000,000 | 40,000,000 | 21,000,000 |
| 1983– | 20,500,000 | 40,400,000 | 19,900,000 |
| 1984– | 20,500,000 | 42,000,000 | 21,500,000 |
| 1985– | 21,000,000 | 43,000,000 | 22,000,000 |
| 1986– | 21,000,000 | 43,000,000 | 22,000,000 |

credibility to be given to the various experts' testimony. Regarding credibility, the trial court noted that arguments were advanced by both sides that certain witnesses were more credible than others. After briefly recognizing the various witnesses called by the parties as to fair market value, the trial court stated:

So the Court, after considering the testimony of all of the witnesses and respectfully recognizing them as being responsible, respected experts in their own areas, the Court nevertheless must make a determination as we have indicated, and based on our findings of fact, based on the competent credible evidence, we make the following determination—make the following findings.

One, we find that the board's records, . . . found in 1977 the fair market value would be nineteen million nine hundred twenty thousand dollars [$19,920,000]. [Westinghouse's] testimony was that the fair market value would be nineteen million five hundred thousand [$19,500,000], . . . and [the taxing authorities] testified during the year 1977 that the fair market value would be thirty-four million dollars [$34,000,000].

The Court based on his consideration of the evidence as we have indicated, we disagree with both experts, and we find the fair market value for the year 1977 is twenty-six million dollars [$26,000,000].

For the year 1978, the board's value was nineteen million nine hundred twenty thousand dollars [$19,920,000], and [Westinghouse's] expert testimony was twenty million dollars [$20,000,000], and [the taxing authorities'] testimony was thirty-six million dollars [$36,000,000]. The Court's determination of the fair market value for 1978 is twenty-seven million five hundred thousand [27,500,000].

For years 1979 through 1986, the trial court recited the respective opinions of fair market value offered by the experts, and stated its own finding of fair market value. In each case, the trial court roughly "split the difference" between the

testimony of Westinghouse's lead expert and the taxing authorities' lead expert.[2]

"The duty of the trial court in hearing a tax assessment appeal *de novo* is to independently determine the fair market value of the parcel on the basis of the competent, credible and relevant evidence presented by the parties." *In re Appeal of Jostens, Inc.*, 97 Pa.Commw. 106, 508 A.2d 1319, 1323 (1986) (citations omitted); *In re Appeal—Kriebel Tax Assessment Case*, 79 Pa.Commw. 466, 470 A.2d 649 (1984). "The determination must be ultimately made, on the basis of competent testimony, as to the worth of the property in the market at a fair sale." *Deitch Co.*, 417 Pa. at 222, 209 A.2d at 402. The de novo hearing in a tax assessment appeal is heard, non-jury, by a judge of the Court of Common Pleas. The General County Assessment Law provides in relevant part:

Any owner of real estate or taxable property in the Commonwealth, who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property, may appeal from the decision of the ... Board of Property Assessment, Appeals and Review, in counties of the second class, ... to the court ... and, thereupon, the court shall proceed, at the earliest convenient time to be by them appointed, of which notice shall be given to the ... Board of Property Assessment, Appeals and Review, in counties of the second class, ... to hear the said appeal and the proofs in the case and to make such orders and decrees touching the matter complained of as to the judges of said

2.

| | WESTINGHOUSE | TAXING AUTHORITIES | SPLIT DIFFERENCE | COURT FINDING |
|---|---|---|---|---|
| 1977– | $19,500,000 | $34,000,000 | $26,750,000 | $26,000,000 |
| 1978– | 20,000,000 | 36,000,000 | 28,000,000 | 27,500,000 |
| 1979– | 19,000,000 | 38,000,000 | 28,500,000 | 28,000,000 |
| 1980– | 19,000,000 | 38,000,000 | 28,500,000 | 28,000,000 |
| 1981– | 19,500,000 | 40,000,000 | 29,750,000 | 29,000,000 |
| 1982– | 19,400,000 | 40,000,000 | 29,700,000 | 29,500,000 |
| 1983– | 20,500,000 | 41,000,000 | 30,750,000 | 30,500,000 |
| 1984– | 20,500,000 | 42,000,000 | 31,250,000 | 30,250,000 |
| 1985– | 21,000,000 | 43,000,000 | 32,000,000 | 31,500,000 |
| 1986– | 21,000,000 | 43,000,000 | 32,000,000 | 32,000,000 |

court may seem just and equitable having due regard to the valuation and assessment made of other real estate in such county....

General County Assessment Law, 72 P.S. § 5020–518.1. The trial court, thus, has the duty to hear, without a jury, a tax assessment appeal de novo, to consider the competent and credible evidence, and to make a determination as to fair market value based upon the competent and credible evidence presented. In making a determination in a tax assessment appeal, the trial court must state the basis and reasons for its decision. The trial judge, although sitting as the trier of fact, does not have the right to render a decision without stating its reasons therefor as does a jury in a jury trial.

■ Here, the trial court considered the testimony of the various experts, and found all of them competent and credible. Based on this determination, the trial court concluded that the fair market value of the property was somewhere between the values presented by the parties. Such a finding is appropriate when a trial court is presented with conflicting testimony by equally credible experts. See Aletto v. Aletto, 371 Pa.Super. 230, 537 A.2d 1383 (1988) (trial court acted within its discretion in assigning equal weights to the testimony of the two experts, and averaging the two figures to arrive at an estimated fair market value); see also In re Appeal of Ross, 88 Pa.Commw. 618, 491 A.2d 929 (1985) (trial court's determination that the fair market value of the property lies between the valuations offered by the experts does not render the determination arbitrary); Westinghouse Electric Corp. v. Bd. of Assess. Appeals, 30 Pa.Commw. 264, 373 A.2d 766 (1977) (the trial court was in the best position to evaluate the testimony and conclude that the fair market value was somewhere "in between"). Accordingly, we find that the trial court did not abuse its discretion by splitting the difference between the values presented by the competing experts.[3]

3. Westinghouse also argues that trial court erred and abused its discretion in considering the expert testimony of William Reilly whose opinion was offered into evidence by the taxing bodies. Westinghouse argues that Mr. Reilly's opinion of fair market value was not credible in

■ Westinghouse next argues that the Commonwealth Court's order of remand on the common level ratio issue should be amended to direct the trial court to accept the ratios presented by Westinghouse's expert. The taxing authorities argue that the Commonwealth Court erred in reversing the trial court's determination that the common level ratio for 1977 through 1979 was 39%. The taxing authorities contend that the order of the trial court setting the common level ratio at 39% should be affirmed.

At trial, the Board of Property Assessment Appeals and Review (Board) established, through both oral testimony and documentary evidence, that the common level ratio for 1977 through 1979 was set at 50%. This testimony and evidence made out a prima facie case for the validity of the common level ratio for 1977, 1978 and 1979. *Deitch Co.*, 417 Pa. at 222, 209 A.2d at 402. To overcome the taxing authorities' prima facie case, Westinghouse called an expert who testified that he had conducted a ratio study of tax assessments to fair market value in Allegheny County for the years 1977 through 1979. In his study, the expert used a magnetic computer tape provided to him by Allegheny County, one of the parties to this litigation. The tape contained a report of all of the sales of real estate that occurred in Allegheny County in the years 1978, 1979, 1980 and 1981, and included the following data: parties to the sale, date of sale, assessed value of the property sold, market value of the property sold, whether the county considered the sale to be an arm's length transaction, whether the property was sold at a sheriff's sale, the community in which the property sold was located, and other related information. Because the county assessment office was unable to provide a report of all the sales of real estate in Allegheny

that it was contradicted by four other expert opinions of fair market value, and the differences in the respective opinions ranged between $14,500,000 and $22,000,000 for the years in question. We find no merit in this argument. The credibility and weight of evidence is not dependent upon the quantity of witnesses. A court is not required to decide an issue in favor of the party having the largest number of witnesses who testify in support of that party's position. *See Hessler v. Suburban Propane Natural Gas Company*, 402 Pa. 128, 166 A.2d 880 (1961).

County for the year 1977, Westinghouse's expert and his assistants gathered the necessary data from original records, including the deed registry and assessment books. The expert testified that, in his study, he calculated a number of measures, including: (a) the central tendency, which is the ratio at which the ratios tended to cluster; (b) the median, which is the measure of the central tendency that provides a middle range below which half of the ratios fall and above which half of the ratios fall; (c) the modal range, which is the range in which the largest number of sales are made; and, (d) the aggregate ratio, which is a valuated ratio calculated by multiplying the ratio of each property sold by the sales price of that property. The expert concluded, based upon his study of public records, that the common level ratios for the years 1977, 1978 and 1979 were as follows: 1977—26.04 percent; 1978—25.94 percent; and, 1979—24.38 percent.

The taxing authorities called an expert on statistical analysis to criticize Westinghouse's expert's study from a statistical point of view. The expert described what he considered to be flaws in the Westinghouse study, and stated his belief that the methodology for selection of the sample used by Westinghouse was questionable.

The statistical methodology used by Westinghouse's expert had been previously accepted as valid by this Court in *Appeal of Massachusetts Mut. Life Ins. Co.*, 426 Pa. 566, 235 A.2d 790 (1967). In *Appeal of Massachusetts Mut.* we said: "[W]e are satisfied that the ratio testimony produced by the owner through [its expert] was competent and credible and was properly accepted by the court below." *Id.* 426 Pa. at 571, 235 A.2d at 792. In the instant case too, we are satisfied that the ratio testimony introduced by Westinghouse through its expert was competent and credible, and was properly received in evidence by the trial court. In addition to the expert testimony, Westinghouse presented the following evidence:

1. A 1977 U.S. Census Bureau ratio study report, which based on 1976 data, determined that the ratio in Allegheny County was 26.9% for 1977. (Westinghouse Exhibit No. 15).

2. A report dated June 9, 1976, by a Committee to Study and Report on Assessment Practices, Procedures and Policies which was appointed in 1976 by the Board of Commissioners of Allegheny County which stated that, based upon 1976 data, there was a ratio of 33⅓% for 1977.

3. A memorandum dated April 28, 1976 from Dr. Charles T. Blocksidge, Director of Assessment of Allegheny County to Gordon Mulleneaux, Director of Administration of Allegheny County, which sets forth that the 1977 ratio for Allegheny County was between 24% and 26% (Westinghouse Exhibit No. 6).

4. A consent order entered by Judge Nicholas Papadakos (now Supreme Court Justice Papadakos), dated October 5, 1978 in, the case of *Borough of Green Tree v. Board of Property Assessment Appeal & Review*, 459 Pa. 268, 328 A.2d 819 (1974) wherein it was ordered that the Board of Property Assessment Appeal & Review continue to implement certain recommendations which included the recommendation that the ratio of assessed value to market value be formally established at or near 33⅓% no later than January 1, 1977.

The trial court, in its oral adjudication, reviewed the applicable law, summarized the testimony of Westinghouse' expert and noted the criticism of the testimony which was offered by the taxing authorities. The court then stated its finding, based upon all of the evidence, including the testimony produced by direct examination and cross examination, and the detailed arguments and briefs of the parties, with respect to common level ratio as follows: 1977—39%; 1978—39%; and 1979—39%. In determining the common level ratio to be 39% for 1977 through 1979, the trial court roughly "split the difference" between the 50% ratio introduced by the taxing bodies and the expert testimony presented by Westinghouse which placed the ratio at 26.04 for 1977; 25.94 for 1978; and 24.38 for 1979. However, in its adjudication, the trial court failed to articulate any basis or reason for the 39% ratio it declared for each of the years in question. It appears from the record that from the outset the trial court planned to

average the parties' respective positions in determining the common level ratio for the disputed years, and then proceeded to carry out its plan of a compromise ratio at the conclusion of the trial.

Prior to hearing testimony regarding the common level ratio, the trial court attempted to explore, with counsel for the parties, the possibility of reaching a compromise agreement as to the common level ratio for 1977, 1978 and 1979. When counsel for one of the taxing authorities informed the court that the taxing authorities were bound by the ratio which had been established by the Board of Property Assessment Appeals and Review, and that the taxing authorities possessed no authority to agree to a compromise on the ratio issue, the trial court, before it heard testimony, implied that it could and would impose a compromise ratio percentage to resolve the case.

The trial court stated:

[I]s it conceivable that a Court may make a decision saying that the ratio of 50 per cent is in error, it could be changed and also have one assessment of 33 percent, 35, 40 per cent or escalated? Couldn't [we] make that kind of decision? Can we make that kind of decision? I think [we] can and *we will.* (Emphasis added).

(Rep.Rec., p. 63a)

[T]he Court, based on what it perceives to be the competent and credible evidence *will make a decision which will be different from what all the experts may have testified to.* (Emphasis added).

(Rep.Rec., p. 63a).

The trial court made these announcements prior to receiving evidence on the common level ratio issue. It appears that the court, unable to prevail upon the parties to reach a compromise agreement which would involve some middle ground between their respective positions, imposed a compromise by roughly "splitting the difference" between the respective ratio percentages presented by each side.

█ Art. 8, § 1 of the Pennsylvania Constitution requires that all taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax. This means that all real estate is a constitutionally designated class entitled to uniform treatment and the ratio of assessed value to market value adopted by the taxing authority must be applied equally and uniformly to all real estate within the taxing authority's jurisdiction. *McKnight Shopping Center, Inc. v. Bd. of Property Assess., Appeals & Review,* 417 Pa. 234, 209 A.2d 389 (1965).

In determining, however, whether the constitutional requirement with respect to uniformity has been complied within a taxing district, all properties are comparable in constructing the appropriate ratio of assessed value to market value. This is because the uniformity requirement of the Constitution of Pennsylvania has been construed to require that all real estate is a class which is entitled to uniform treatment. (Citations omitted).

*Deitch Co.,* 417 Pa. at 223, 209 A.2d at 402.

Based upon the foregoing, we conclude that the trial court's determination of 39% as the common level ratio for the years 1977 through 1979 is arbitrary, and is not supported by the evidence.

Westinghouse argues that the only direct evidence of the common level ratio was presented by its expert witness. Westinghouse contends that the uncontradicted testimony of its expert rebutted the prima facie validity of the 50% ratio introduced by the taxing authorities. Citing *Deitch Co.,* 417 Pa. at 223, 209 A.2d at 402, Westinghouse argues that since its expert's testimony was not offset by the evidence of the taxing authorities' experts, the trial court was required to accept Westinghouse's evidence of common level ratio and to apply it to the years in question. In *Deitch Co., supra,* we said:

[T]he taxing authority always has the right to rebut the owner's evidence and in such a case the weight to be given to all the evidence is always for the court to determine. The taxing authority cannot, however, rely solely on its

assessment record in the face of countervailing evidence unless it is willing to run the risk of having the owner's proof believed by the court. Where the taxpayer's testimony is relevant, credible and unrebutted, it must be given due weight and cannot be ignored by the court. It must necessarily be accepted. (Citations omitted).

*Id.* at 222, 209 A.2d at 402.

In the instant case, the testimony of the Westinghouse expert was received by the trial court as competent, credible and unrebutted evidence. That evidence, thus, must be accepted and given due weight. However, the weight that is due is for the trial court to determine. We will not, upon this record, insist that the trial court find the common level ratio for the years in question to be what Westinghouse's expert said it was. Such a course would be tantamount to this Court's deciding the common level ratio for the relevant years. Accordingly, this question must be remanded to the trial court for resolution.

■ Finally, it is argued that the trial court erred in refusing to compel the Board to produce the appraisal of fair market value which was done at its request by William A. Berman. In anticipation of trial, the Board of Property Assessment Appeals and Review hired Berman & Co. to prepare an appraisal of the Westinghouse Research and Development Center property for 1980. Westinghouse learned that Mr. Berman's appraisal of the property was $24,000,000, which was closer to the fair market value of $19,000,000 testified to by Westinghouse's lead expert than it was to the $38,000,000 fair market value presented by the taxing authorities' expert. Westinghouse contends: (1) that the Berman appraisal was essential for it to determine the criteria used by the Board's expert; and, (2) that the appraisal supported the fair market value position of Westinghouse and discredited the credibility of the taxing bodies' expert witness as to fair market value.

Prior to calling its witnesses as to fair market value, Westinghouse moved for an order directing that the Board produce

the appraisal report made by Mr. Berman. The trial court granted the motion and signed an ex parte order in the absence of counsel for the Board. Subsequently, the Board asked the court to reconsider its order requiring production of the Berman appraisal. The trial granted reconsideration, and after argument, applied Pa.R.C.P. 4003.5(a)(3) and vacated its order directing that the Berman report be produced.

The Commonwealth Court held that the trial court properly applied Pa.R.C.P. 4003.5(a)(3) in ultimately denying Westinghouse's request for production of the Berman report. Rule 4003.5(a)(3) provides as follows:

A party may not discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, except a medical expert as provided in Rule 4010(b) or except on order of court as to any other expert upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.

Pa.R.C.P. 4003.5(a)(3).

Westinghouse attempted to show that exceptional circumstances were involved which made impractical the acquisition of facts or opinions on the same subject by other means, thus requiring an order of court directing production of the Berman report. The trial court rejected Westinghouse's argument and found that the circumstances of this case were not exceptional within the meaning of Rule 4003.5(a)(3), and that the Berman report was accordingly not discoverable. Westinghouse was fairly able to obtain and present expert opinion as to fair market value. Based upon the record, we are satisfied that the trial court did not err in denying discovery of the Berman report.[4]

4. Westinghouse also argues that the Second Class County Code, 72 P.S. § 5452.4(e), which is applicable to Allegheny County, imposes a duty

For the foregoing reasons, the order of the Commonwealth Court is affirmed, and this case is remanded to the trial court for proceedings consistent with this opinion.

ZAPPALA, J., did not participate in the consideration or decision of this case.

FLAHERTY, J., files a Concurring and Dissenting Opinion in which NIX, C.J., joins.

PAPADAKOS, J., files a Concurring and Dissenting Opinion in which CAPPY, J., joins.

MONTEMURO, J., is sitting by designation.

FLAHERTY, Justice, concurring and dissenting.

I join in the court's affirmance of the Commonwealth Court's approval of the trial court's fair market value. The majority recognizes that the trial court did what judges are often forced to do: it found the experts on both sides to be credible and, in the proper exercise of the fact-finding function, selected values within the extremes represented by the credible evidence. Certainly, there is nothing arbitrary about setting the values near the midpoints of the range, as the trial court did in this case.

The same reasoning, of course, would support the common level ratios established by the trial court for the years 1977

upon the Board to produce the Berman appraisal. Section 5452.4 provides as follows:

> The Board of Property Assessment, Appeals and Review shall have power and its duty shall be:
>
> . . . .
>
> (e): To establish and maintain in its office records of cubical contents of buildings, surveys, maps, sales and assessments and with the exception of the cubical contents, records and sales records, to permit inspection thereof by the public at all times during offices hours.

Westinghouse contends that since appraisals of fair market value such as the one prepared by Mr. Berman are not specifically excluded from public inspection, they are necessarily included. We disagree. Section 5452.4 does not pertain to expert opinions made in anticipation of litigation. Such documents are governed by the provisions of the Pa.R.C.P. 4003.5 and are not within the purview of Section 5452.4(e).

through 1979. Thus I would reverse the Commonwealth Court's order rejecting the challenged common level ratios and accept the ratios established in the traditional exercise of fact-finding discretion by the trial court. I dissent from the portion of this court's opinion which affirms the Commonwealth Court's remand of the issue for another round of this interminable litigation.

NIX, C.J., joins this concurring and dissenting opinion.

PAPADAKOS, Justice, concurring and dissenting.

I agree that this matter must be remanded for further proceedings on the question of the correct common level ratio for the years in question and to that extent I join that portion of the majority opinion which disposes of that issue. I dissent, however, to that portion of the majority opinion which affirms the fair market values as found by the trial judge.

The majority correctly notes that, under the General County Assessment Law, 72 P.S. § 5020–518.1, the trial court has the duty to hear, without a jury, a tax assessment appeal; that such appeals are heard *de novo;* that the court is to consider the competent and credible evidence and thereafter make a determination as to the fair market value based upon the competent and credible evidence presented, and that the trial court (unlike a jury), as finder of fact, must explain its reasons for arriving at its conclusions. (Opinion, p. 1312).

The trial judge, sitting without a jury, heard and accepted as credible, relevant and reliable the testimony from two competing and controverting experts who gave differing opinions as to the fair market values and, without articulating any basis or reason, the trial judge, in essence, split the difference between the two extremes and fixed the fair market values. The majority finds this treatment proper and affirms.

Although each expert testified at length and produced large amounts of evidence to support his opinion as to values, the trial judge did not articulate what parts of the evidence he relied upon to make his findings.

474

The majority also correctly states that, "Our scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by substantial evidence." (Opinion, p. 1309). How are we to know what evidence is relied upon by the trial judge when he does not articulate same?

When there is a plethora of conflicting evidence, it has to be the burden of the trial judge to articulate what portions of all the evidence was chosen to support the findings of fact made and for the appellate courts to determine whether the articulated evidence is substantial enough to support the findings of the trial judge. Did the trial judge rely on capitalization of net income, gross income multiplier, market comparables, reproduction costs? What available proofs were used?

In his statement, the trial judge simply states, "The Court based on his consideration of the evidence as we have indicated, we disagree with both experts, and we find the fair market value for the year 1977 is twenty-six million dollars [$26,000,-000]." Merely accepting all the conflicting evidence as credible, reliable and relevant and then "splitting the difference" is nothing more than pure guess work. The parties are entitled to know, and the appellate courts must know, what portions of the evidence were relied upon and what parts were rejected.

The findings of the trial judge must be based upon substantial evidence. Did the trial judge here conclude that the evidence supporting the lower evaluations was substantial and thus support a higher evaluation? Or did the trial judge conclude that the evidence supporting the higher evaluations was substantial and thus supports a lower evaluation? Who knows? I don't and I am sure the parties don't!

Obviously, the trial judge cannot accept all of the evidence of one expert and use it as a basis for a higher or lower evaluation than that given by the expert. The trial judge, of course, can accept the opinion of one expert and reject the opinion of any contradictory expert and find the fair market value as proposed by the expert relied upon. There then is no

need for specificity in writing an opinion and articulating the evidence relied upon. The appellate courts can review the whole body of evidence relied upon by the trial judge and decide whether it is substantial.

If the trial judge does not rely completely upon the opinion of one expert to the exclusion of all others, the trial judge must, of necessity, select those portions of all the evidence which support the findings of fact as to fair market values. The trial judge in this case did not rely upon the opinion of either expert and he failed to tell us what portions of the evidence introduced by all the experts were used to support his conclusions.

It is not for the appellate jurists to sift through the hundreds of pages of testimony and exhibits to pick and choose the evidence which substantially supports the findings of fact as to evaluations. It is for the trial judge to do so. Our duty is to determine whether the evidence the trial judge articulates as credible is substantial enough to support the findings of fact.

The rule now established by the majority simply means that, henceforth, the parties in a tax assessment appeal can simply have their experts testify to low values for the taxpayer and extremely high values for the assessors and taxing bodies. The judge can then simply split the difference without explanation. I find this to be jurisprudentially wrong. On the other hand, maybe this new rule will bring about more settlements and avoid the necessity of *de novo* trials. The parties can just as easily split the difference as can the trial judge.

Simply stated, I believe the trial judge, as fact finder, must complete the question, "I find the fair market value (or common level ratio) to be x number of dollars BECAUSE...."[1] This has not been done here and I dissent.

CAPPY, J., joins this Concurring and Dissenting Opinion.

1. It is interesting to note that in each case cited by the majority to support the scheme of splitting the difference, the trial judge wrote a full opinion articulating the evidence relied upon to support the finding of fair market value.