## Gruver v. Gruver

214

*Jeffrey R. Boyd,* for plaintiff.
*Kathleen D. Dautrich,* for defendant.

LASH, *J.,* December 18, 2006—Defendant, Susan J. Gruver (Wife), has appealed the order of this court entered November 8, 2006, dismissing five of the six exceptions filed by Wife from the recommendation of the special master in divorce, Robert E. Giering, Esquire.

The parties were married on June 29, 2002 and separated on March 29, 2004. Prior to their separation, on March 22, 2004, plaintiff, Karl S. Gruver (Husband), filed the within action in divorce. Wife would not consent to the divorce, and as a result, the matter did not proceed to a hearing before the special master until April 10, 2006, after the parties had been separated for over two years.[1]

Prior to the marriage, on May 30, 2002, the parties signed an agreement entitled "prenuptial agreement." This agreement, inter alia, sets forth the rights and duties of the parties to their income and property in the event of a divorce. Section 3.01 of the agreement states:

"The income and property of the parties listed in their respective schedules . . . , together with all income from that property that accrues during marriage and all appreciation in value of that property that occurs during marriage, regardless of the reason for the appreciation, shall be owned as the separate property of that party during marriage and shall not be considered marital property in the event of a divorce. However, the parties agree that the increase in value during the marriage of [Husband's] real property *only*, located at 631 Walker Road, Macungie, Berks County, Pennsylvania, shall be considered marital property in the event of a divorce." (emphasis in the original)

---

1. On April 11, 2006, Husband filed an affidavit alleging a separation of two years, establishing grounds under section 3301(d) of the Divorce Code. Wife did not dispute that the parties were separated for two years.

Paragraph 3.02, dealing with property acquired during the marriage, states:

"The full value of all property that either party acquires during marriage by way of gift, devise, bequest, or descent shall be the separate property of that party and shall not be considered marital property in the event of a divorce. Also, the full value of any property acquired during marriage by a party that is acquired with the proceeds of any sale, other disposition, or change in form of separate property shall remain the separate property of that party. All other property acquired during marriage shall be deemed to be marital property in the event of a divorce."

Section 3.04 of the agreement states:

"If the marriage should terminate in the divorce of the parties, and without regard to the fault of either party in causing the termination, all property as set forth in exhibits 'A' and 'B' to this agreement, and all separate property as set forth in this agreement, shall remain the separate property of the respective parties. Neither shall claim or have any right to compel equitable distribution of any separate property of the other. The parties agree that all marital property shall be divided equally (50 percent to each party) between them."

Based on his interpretation of the prenuptial agreement, the special master determined that the only property available for equitable distribution was the increase in value of Husband's residence during the marriage. To reach a value, the special master accepted evidence for the value of the residence as of the date of separation,

March 25, 2004, and as of the date of the marriage, June 29, 2002. Regarding the date of separation, both parties relied on expert opinions from real estate appraisers. Husband's expert appraised the residence at $205,000. Wife's expert reached an opinion of $229,027. The special master averaged the two figures, concluding that a fair value for the property as of separation would $217,500.

Regarding value as of the date of marriage, Husband's appraiser opined that the value was one $185,000. Wife did not present an appraisal, relying instead on exhibit A of the prenuptial agreement, in which the value of the residence was estimated by Husband to be $151,700. This figure was derived from the tax assessment on the property. The special master rejected Wife's approach, and accepted Husband's appraisal. He then subtracted $185,000 from $217,500 to find an increase in value for the property of $32,500. Based on the terms of the prenuptial agreement, specifically section 3.04, the special master divided the sum of $32,500 evenly between Husband and Wife.

Regarding counsel fees, costs and expenses, the special master found that the prenuptial agreement requires the parties pay their own counsel fees, costs and expenses. According to the special master, Husband paid the initial $500 special master's fee, leaving a balance of $680, which includes "Wife's share of the stenographer's fee of $150." The master recommended that Wife should pay the balance of $680.

On or about May 30, 2006, Wife filed the following exceptions:

(1) There is insufficient evidence on the record to support the findings of fact and conclusions of law to support the distribution recommended by the special master.

(2) The special master erroneously considered an appraisal of Husband's residence that was not given to Wife at the time the parties entered into their prenuptial agreement.

(3) The special master erroneously calculated the increase in value of Husband's residence that was incurred from the time of the parties' marriage until Husband filed for divorce.

(4) The special master erred as a matter of law when interpreting the agreement entered into by the parties as follows:

(a) The agreement clearly indicated the value of Husband's home at the time of the signing of the agreement.

(b) It is undisputed that Husband received a lump sum payment from his Social Security claim that was not included in the agreement, nor did the agreement even reference this payment. The failure to disclose this fact in the agreement invalidates the agreement.

(c) The agreement references attorney's fees and costs in the event of divorce; it is error to attribute the payment of special master fees to the party (Wife herein) that does not file for or seek a divorce.

(5) The special master erroneously calculated the amount of the special master fees he attributed to Wife.

(6) The special master failed to give proper weight to Husband's contribution to preserving the marital estate

by paying for the maintenance of the property, all taxes for five years and all mortgage payments.

In determining an equitable distribution award, the trial court is not bound by the master's recommendations. Although the master's report is entitled to great weight, it is the trial judge who has the responsibility for imposing the distribution. *Tagnani v. Tagnani,* 439 Pa. Super. 596, 654 A.2d 1136 (1995).

We note initially that Wife's exception number 1 is a general statement complaining of the distribution scheme recommended by the special master. As this objection is adequately addressed through our analysis of exceptions 2 through 6, we make no additional finding regarding exception number 1.

Exceptions 2, 3 and 4.a. all attack the special master's analysis of the calculation of increase in value of Husband's residence. We find, however, that the special master's conclusions are supported by the evidence and are proper.

Real estate is appraised on the basis of fair market value. Market value is defined as the price a purchaser, who is willing, but not obliged to buy, would pay an owner, willing, but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied. *Buhl Foundation v. Board of Property Assessment, Appeals and Review,* 407 Pa. 567, 180 A.2d 900 (1962). In determining fair market value of real estate, the proper approach is to consider proffered expert opinions of real estate appraisers, who provide their analyses through comparative sales, income and cost approaches.

Both parties hired certified appraisers with extensive experience. Both appraisers relied upon the market data approach, comparing sales of similar properties, then making adjustments, where appropriate, to reach an appraised figure for the subject property. Additionally, both appraisers utilized the cost approach, deriving a square foot reconstruction cost for the property from Marshall and Swift Evaluation Services. The two figures were then reconciled to arrive at a final appraised figure.

The appraisers' methods were based on well-established principles for real estate appraisals. Their analyses were appropriate.

In reaching his value of $217,500 as of the date of separation, the master states: "Both appraisers appeared and testified and presented similar reports. They each testified that the appraisal of the other was within a reasonable range of the actual value. It should be noted that these two appraisals are about 12 percent apart. It seems reasonable to average them and therefore $217,500 is used herein as the value on the date of separation."

The special master's decision to split the difference between the appraisers' values was reasonable. When a court is presented with conflicting testimony by equally credible experts, the court can, within its discretion, conclude that the fair market value of the property is somewhere between the values presented by the parties. *Westinghouse Electric Corporation v. Board of Property Assessment, Appeals and Review of Allegheny County,* 539 Pa. 453, 464, 652 A.2d 1306, 1312 (1995).

Turning then to the valuation as of the date of marriage, we find that the special master's decision to accept Husband's appraisal value was appropriate. Husband presented an appraiser who determined fair market value based upon comparable sales and from a previous appraisal of the subject residence from 1998. This information provided a sufficient foundation for the appraiser to give an opinion on fair market value.

On the other hand, Wife presented no evidence on the fair market value of the residence as of the date of the marriage, relying on the estimated value placed on the residence by Husband at the time of the execution of the prenuptial agreement, included as part of his disclosure of assets in exhibit "A". The estimate is based on a property tax assessment, and as such, is not a fair indication of fair market value.

Wife's argument that Husband is bound by this estimate is without merit. Section 3.01 of the prenuptial agreement specifically states that it is the increase *in value* of the residence that is subject to distribution, denoting that a fair market value determination should be made. Additionally, section 2.03 of the agreement, requiring each party to give the other a full and complete disclosure of his or her incomes, assets and obligations, specifically states that the "figures and amounts in exhibit 'A' and exhibit 'B' are approximately correct and not necessarily exact." Absent an express requirement within the prenuptial agreement, a party is under no duty to obtain fair market value of each of the assets he or she owns at the time of the execution of the prenuptial agreement. A good fair approximation is all that is necessary. As stated in *Simeone v. Simeone,* 525 Pa. 392, 581 A.2d

162 (1990), disclosure of the financial positions of the parties, including value of financial resources, need not be exact, so long as it is "full and fair." Here, Husband utilized the assessment value accepted by the county for purposes of imposition of property tax. It was reasonable for Husband to use this value to provide a ballpark figure of the value of the residence as of the date of the marriage, rather than require him to pay for an appraisal. His compliance with disclosure requirements is not a basis for binding him to that figure as a statement of fair market value. Exceptions 2, 3 and 4.a. were properly dismissed.

Exception 4.b. sets forth Wife's contention that Husband should be penalized for failing to disclose the existence of a lump sum payment from his Social Security claim. Husband received a lump sum payment in the amount of $60,000, representing payment of Social Security benefits retroactive to the date of his application.

We note initially that Social Security benefits are generally considered income, not assets. See 23 Pa.C.S. §4302. However, whether income or property, the lump sum payment is not to be considered marital property under the terms of section 3.01 of the prenuptial agreement. Additionally, section 4.01 expresses the parties' decision to waive any rights that either may have to alimony or alimony pendente lite, and so the lump sum benefit cannot be considered within that context either.

Wife urges this court to invalidate the prenuptial agreement for failure to disclose the reception of the lump sum payment. We find, however, that the benefit was contingent because Husband had not received the lump sum

benefit at the time of the execution of the prenuptial agreement. Further, his reception of the benefit did not affect the outcome of this case because of the terms of the prenuptial agreement, for the reasons already set forth.

Wife did not establish a proper basis for voiding the agreement, and this court will not do so. Exception 4.b. is dismissed.

In exception 4.c., Wife contends that the special master erred in deciding that the parties should share the costs for the special master and stenographer's fee evenly. The total costs were $1,180.

Awarding costs is an exercise of the equity powers of the court and is solely within its discretion.[2]

The prenuptial agreement is silent on the apportionment of costs. We note, however, that the agreement contemplates that any debt incurred by one party, including attorney's fees pursuant to a divorce, shall be borne by that party, while any joint debt incurred during the marriage would be equally divided between the parties.[3] When equally dividing costs, the special master acted consistently with the method the parties chose for disposition of all other debt. We concur that this was appropriate. Exception 4.c. was properly dismissed.

In exception number 6, Wife argues that the special master gave a credit to Husband for his contribution for maintenance, taxes and mortgage payments of the real

---

2. See 23 Pa.C.S. §3104(a)(1).
3. Section 5.03.

estate. However, the special master made no such determination. He did give Husband a $15,000 credit, but this was required by this court's order of February 18, 2005, by agreement of the parties. Further, there was no basis for the special master to consider giving other credits or offsets, as the terms of the prenuptial agreement precludes such a determination. Exception number 6 was, therefore, properly dismissed.

As stated in its order of November 8, 2006, this court sustained exception number 5 based upon the determination that the special master made a calculation error on the amount of special master fees he attributed to Wife. Our footnote for that order, which we restate here, addresses the matter:

"It appears that the special master credited plaintiff Husband with payment of the initial $500 fee for appointment of a master. In fact, plaintiff Husband admits in his brief that the parties split that cost evenly. Additionally, according to defendant Wife's brief, she paid one-half of the stenographer fee of $150. As a result, there appears to be a need for an adjustment in favor of Wife to reflect the special master's determination that these costs should be split evenly by the parties. If the matter cannot be resolved by agreement, counsel shall meet with the special master with evidence of what was paid. The pendency of this matter shall not stay the entry of the divorce decree."

For the aforesaid reasons, this court requests your honorable court affirm the order entered by this court on November 8, 2006, and dismiss the appeal of defendant, Susan J. Gruver.