**Richard F. WAY, Appellant**

v.

### BERKS COUNTY BOARD OF ASSESSMENT APPEALS.

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 2010.

Decided March 5, 2010.

William F. Ochs, Jr., Fleetwood, for appellant.

Deborah A. Sottosanti, Reading, for appellee.

BEFORE: PELLEGRINI, Judge, BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge PELLEGRINI.

Richard F. Way (Taxpayer) appeals from the order of the Court of Common Pleas of Berks County (trial court) denying Taxpayer's appeal from the decision of the Berks County Board of Assessment Appeals (Board) denying his application to have his land assessed pursuant to the Pennsylvania Farmland and Forest Land Assessment Act of 1974, commonly known as the Clean and Green Act, 72 P.S. §§ 5490.1–5490.13.[1]

Taxpayer owns land in Lenhartsville, Berks County, that has a gross acreage of 10.019 and a net acreage of 9.836. The two figures differ because the gross acreage includes land located on a public road. The land is divided between Taxpayer's home, three agricultural sections totaling

1. Act of December 19, 1974, P.L. 973, *as amended.*

approximately five-and-a-half acres, and a wooded area totaling less than one acre. The three agricultural sections are farmed by Marvin Adam (Farmer), a retired farmer who lives nearby. He grows corn, barley and soybeans for sale and hay for his personal use. Farmer does not pay Taxpayer for the right to farm his land; rather, Farmer receives the benefit of the crops, and Taxpayer receives the benefit of someone taking care of his land.

On April 17, 2008, Taxpayer filed an application with the Board seeking preferential use assessment under the Clean and Green Act on the grounds that he owned more than 10 acres and/or that his land had an anticipated gross income of over $2,000.[2] The Board denied Taxpayer's application, and he appealed to the trial court.

The testimony addressed how the land was used and the value of the crops grown on it. Farmer testified that he plants the same amount of each crop each year, but that the price fluctuates. In 2008, he estimated the value of the corn he planted to

be $900 at the time of trial, but that he had not sold it yet, and that it "could be" worth up to $1,800 by July, depending on the market price. He also sold approximately $210 worth of barley and $320 worth of soybeans. He further testified that he uses the hay he grows to feed his farm animals, but that if he sold it, he would receive approximately $600 to $700. Farmer made less money off the crops in 2007 due to low prices, but he made a similar amount in 2006 because even though the prices were down, he had a higher yield.

■ The trial court found in favor of the Board, holding that 10 acres is a bright-line threshold so the 9.836 net acres could not be rounded up, and that gross acreage could not be used as a basis for qualification for the Clean and Green Act because the land upon the public road is ineligible pursuant to 7 Pa.Code § 137b.2.[3] The trial court also held that Farmer could expect the sale of corn, barley and soybeans to total $1,430 per year ($900 for corn, $210 for barley and $320 for soybeans), and that the hay could not be counted

2. Section 5490.3 of the Clean and Green Act, 72 P.S. § 5490.3, provides:

> (a) For general property tax purposes, the value of land which is presently devoted to agricultural use, agricultural reserve, and/or forest reserve shall, on application of the owner and approval thereof as hereinafter provided, be that value which such land has for its particular land use category if it also meets the following conditions:
> (1) Land presently devoted to agricultural use: Such land was devoted to agricultural use the preceding three years and is **not less than ten contiguous acres in area,** including the farmstead land, **or** has an anticipated **yearly gross income of at least two thousand dollars ($2,000).**

7 Pa.Code § 137b.1 explains in practical terms how the Clean and Green Act functions to benefit a taxpayer:

> (a) This chapter establishes procedures necessary for the uniform Statewide implementation of the act. The act provides for

land devoted to agricultural use, agricultural reserve use or forest reserve use to be assessed at the value it has for that use rather than at fair market value. The intent of the act is to encourage the keeping of land in one of these uses.
> (b) The benefit to an owner of enrolled land is an assurance that the enrolled land will not be assessed at the same value for tax assessment purposes as land that is not enrolled land. In almost all cases, an owner of enrolled land will see a reduction in his property assessment compared to land assessed or valued at its fair market value. The difference between assessments of enrolled land and land that is not enrolled will be most noticeable when a county is reassessed.

3. Section 137b.2 defines "ineligible land" as "Land which is not used for any of the three eligible uses (agricultural use, agricultural reserve or forest reserve) and therefore cannot receive use value assessment."

because Farmer did not sell it and, therefore, received no income from it. As neither the 10 acre nor $2,000 threshold was met, Taxpayer did not qualify for preferential use assessment under the Clean and Green Act. This appeal followed,[4] where Taxpayer again argues that nothing in the Clean and Green Act authorizes the Board to use net acres rather than gross acres in computing the size of a tract, so all the land should be counted or that crops have to be sold to meet the $2,000 threshold.

As to what is the correct measure of acreage, neither the Act itself nor its regulations provide whether gross or net acres are to be used in calculating eligible land. However, Section 137b.2 defines "ineligible land" as "[l]and which is not used for any of the three eligible uses (agricultural use, agricultural reserve or forest reserve) and therefore cannot receive use value assessment." 7 Pa.Code § 137b.24 provides, in relevant part, "ineligible land may not receive preferential assessment."

■ Here, Taxpayer's land consists of four types: land farmed by Farmer, his house and yard (farmstead land), a woodlot, and land over which runs a public road. The first three clearly fall under the definition of "agricultural use" and also make up the entirety of his 9.836 net acres of land. The public road solely accounts for the difference in size between Taxpayer's 10.019 gross acres and his 9.836 net acres.[5] This land is not used for agriculture or forestry, nor is it part of the farmstead. Because a public road falls under the definition of ineligible land, it cannot be used in calculating whether Taxpayer qualifies for preferential use assessment under the Clean and Green Act.[6]

Even if he is not entitled to a preferential use assessment because he does not have sufficient acreage, Taxpayer contends that he qualifies for preferential use assessment under the Clean and Green Act because he has an "anticipated yearly income" of at least $2,000. Whether Taxpayer meets this threshold depends on whether he can count the $600 to $700 value to Farmer of the hay he personally uses but never places on the market, and whether Farmer's hope that the value of his corn may have risen from $900 to $1,800 by the time he sold it due to rising market prices is sufficient to allow use of the higher value.[7] These determinations hinge on the definitions of "income" and "anticipated income."

■ As the trial court correctly noted, the Internal Revenue Regulations require a "sale" for a farmer using the cash meth-

---

4. When reviewing tax assessment matters, we must determine whether the trial court abused its discretion, committed an error of law, or reached a conclusion not supported by substantial evidence. *Westinghouse Electric Corp. v. Board of Assessment,* 539 Pa. 453, 652 A.2d 1306 (1995).

5. No testimony was offered concerning whether the difference between gross acres and net acres is always accounted for by public roads or whether land that qualifies for preferential use assessment under the Clean and Green Act could ever be counted as gross acreage but not net acreage.

6. We further note that requiring the Board to use gross acreage in computing the tax value of land would throw the county's entire assessment system into chaos, as all county assessments use net acres because the tax maps use net acres. Taxpayer articulated no reason why the Clean and Green Act is alone among tax assessment statutes in requiring gross acreage, so presumably a holding that the Clean and Green Act requires gross acreage would also require all other tax assessment statutes to use gross acreage. This Court will not force such sweeping changes unless there is strong justification for doing so.

7. The record is silent as to the price Farmer ultimately received for the corn he planned to sell.

od of accounting to have gross income.[8] Farmer never sold the hay he harvested from Taxpayer's land. Rather, he testified that he used this home-grown hay to feed his farm animals rather than buying hay on the market. If he had to buy an equivalent amount of hay, it would have cost him $600–$700. Farmer's use of the hay is exactly equivalent to a homeowner who has a backyard vegetable garden. Such a homeowner might grow vegetables that, if bought in the supermarket, would have cost him $100. This homeowner has no income from these vegetables and no obligation to estimate their value so that the government may tax them. On the other hand, if the homeowner had sold his vegetables at a farmer's market, he would have had taxable income. Likewise, if Farmer had sold the hay he grew on Taxpayer's land, he would have had taxable income, but he did not, making the estimated $600 to $700 value of the hay not "anticipated yearly income" necessary to satisfy the $2,000 threshold.

■ Likewise, Taxpayer cannot place a higher value on the corn based on what Farmer testified it "could be" worth several months after he testified if the market prices rose to a certain level. "Anticipated yearly income" is different from "hoped-for yearly income" or "possible yearly income."[9] Anticipation entails an expectation, not a desire or a possibility. Farmer testified that there was a possibility that the corn would be worth $1,800 by the time he sold it, but at the time of his testimony, it was worth $900. Furthermore, Farmer testified that in the previous two years, he had received similar to slightly lower values for the crops he sold. Because nothing in the record contradicts the $900 value that Farmer placed on the corn, the trial court was correct in using that figure to compute the anticipated yearly income of $1,430 for the crops from Taxpayer's land.

Because Taxpayer satisfied neither the 10 acre nor $2,000 anticipated yearly income thresholds for receiving preferential use assessment under the Clean and Green Act, the order of the trial court is affirmed.

### ORDER

AND NOW, this *5th* day of *March*, 2010, the order of the Court of Common Pleas of Berks County, dated March 31, 2009, is affirmed.

---

**8.** 26 C.F.R. § 1.61–4 provides that gross income of farmers includes the following:

(1) The amount of cash and the value of merchandise or other property received during the taxable year from the sale of livestock and produce which he raised,

(2) The profits from the sale of any livestock or other items which were purchased,

(3) All amounts received from breeding fees, fees from rent of teams, machinery, or land, and other incidental farm income,

(4) All subsidy and conservation payments received which must be considered as income, and

(5) Gross income from all other sources.

**9.** Webster's Third New International Dictionary, page 94, defines "anticipate" as:

*vt* (1) to consider in advance: give advance thought, discussion or treatment to; (2) to cause to occur prematurely: meet (an obligation) before a due date; (3a) to deal with in advance: counter, guard against, or forestall by prior action; (3b) *to foresee and satisfy* or fulfill beforehand; (4) to realize or actualize before an expected or plausible time; (5) to use or expend in advance of actual possession; (6) to act before (another) often with the intent or effect of checking or countering; (7) look forward *as to certain; vi* (1) to come before the *expected* time; (2) to speak or write in a way conditioned by *knowledge or expectation* of what will be treated later.

(Emphasis added).