## Harleigh Realty Co.'s Case.

Argued January 27, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Darlington Hoopes,* Assistant City Solicitor, with him *John G. Rothermel,* City Solicitor, *George W. Manderbach* and *George B. Balmer,* for appellant.—The evidence was not sufficient to sustain a reduction of the assessment: Drake v. Northampton Co., 14 Pa. Dist. R. 688; Kaemmerling's App., 282 Pa. 78; McSorley v. School Dist., 291 Pa. 252; Railroad and Mining Co. v. Co. Comrs. (No. 1), 229 Pa. 436, 453; D., L. & W. R. R. Co.'s Tax Assessment (No. 1), 224 Pa. 240, 244; L. & W.-B. Coal Co. v. Co., 225 Pa. 267, 271; Lehigh Valley Coal Co. v. Co. Comrs., 250 Pa. 515, 523; Penna. Co.'s App., 282 Pa. 69, 73.

*H. F. Kantner*, with him *Franklin E. Kantner*, for appellee.—The only measure of valuation recognized by law is market value as distinguished from actual value, or, differently expressed, actual value limited and defined by market value: P. & R. C. & I. Co. v. Co. Comrs., 229 Pa. 460; Kemble's Est., 280 Pa. 441; Penna. Co. for Ins. etc., App., 282 Pa. 69; Kaemmerling's App., 282 Pa. 78.

Appellant's argument with respect to the value of the testimony of real estate experts is not in accord with the decisions of our Supreme Court: Kemble's Est., 280 Pa. 441.

OPINION BY MR. JUSTICE SCHAFFER, March 17, 1930:

In this proceeding the City of Reading asks us to review the action of the Court of Common Pleas of Berks County determining the proper assessment of a certain piece of real estate. The city assessor assessed it at $270,000 and this was approved by the board of revision and appeal. After hearing, the court reduced the assessment to $240,000.

If fixing assessments were only a problem in mathematics or an exercise to demonstrate a theory, it might be that the arguments of the representatives of the city could prevail, but the question is one of taxation and "Taxation is a practical and not a scientific problem": P. & R. C. & I. Co. v. Northumberland Co. Comrs., 229 Pa. 460, 471; Com. v. P. R. R. Co., 297 Pa. 308, 315; Farmers Loan & Trust Co. v. Minnesota, U. S. Sup. Ct., Jan. 6, 1930. "Scientific formulas, arithmetical deductions and mental contemplations have small value in making assessments under our practical system of taxation": Kemble's Est., 280 Pa. 441, 445. We learn from the record that in making up its assessments the city called to its aid an appraisal company, which made certain calculations in accordance with the formulas adopted by it. Each calculation was based on the value of a basic unit of ground 100 feet in depth by one foot in

breadth. It would be surprising to learn that any property in the city had ever been actually bought and sold on such a basis. When the court, reviewing the action of the taxing authorities, came to formulate its judgment, it did so in the usual, customary and proper way, from a consideration of evidence as to the actual value of the property, and applied to its conclusion of what that value was, the percentage which the assessing officials had applied throughout the city,—60 per cent of the value determined upon,—and so having concluded that the fair market value of the property was $400,000, fixed the assessment at $240,000.

The contention of the city is that the property owner failed to show that the assessment as originally made exceeded the fair market value of its property or was not uniform with the assessments of other properties throughout the city. When a property owner shows, as was shown here, that assessments throughout the taxing district were made upon the basis of 60 per cent of market value and what the market value of his property is, and that the assessment, if based on such value, exceeds the established percentage, he has made out a case entitling him to relief. It is urged that, as the lowest market value placed on the property by any witness was $385,000, and as the assessment fixed by the city authorities was $270,000, the assessment did not exceed the value of the property and the owner, therefore, is not entitled to a reduction on that account. This might be true if the problem should be considered piecemeal, but the court could not shut its eyes to the true situation, that actual market values were not the determinant of the assessment, but that a percentage thereof was. It is argued that the property owner, by showing the value of his own property alone and applying the percentage to it, ignored the second test of an assessment required by article IX, section 1 of the Constitution,—uniformity,—that as the assessor had fixed all values by his opinion of what the fair market value was, and as

the assessment placed thereon was less than its actual value, and was uniform with that placed upon other properties, even if the market value is too high, it is altogether probable that it is too high as to other properties, and the effect of taking the assessor's value figures as to the property of others, and not his figures as to the property in question, results in lack of uniformity; that the property owner should not be permitted to dodge the test of uniformity by accepting the assessor's opinion as to the market value of all other properties throughout the city and refuse to accept it as to the market value of the property in question. Appellant totally misconceives the meaning of uniformity. The term means that all property of the same nature must be taxed alike. According to the statute, the subject-matter of the tax is what the property would bring at a fair public sale (actual value). It is argued that the assessor, however, as to the property in question took another and unjustified value. The requirement of uniformity,—it is almost superfluous to point out,—does not protect an invalid levy because it is universal. A tax must be uniform to be good. It is not good simply because it is uniform.

It is urged that if the assessment does not exceed the actual value of the property as fixed by the court below from the testimony of the experts on both sides, the property owner should then be required to produce testimony as to the value of other properties throughout the district, and, after the city's experts have testified as to their opinion of the actual value of the properties selected by the property owner, and other properties which the city may select, and the assessments of these additional properties have been offered in evidence, then, and then only, will the court be in position to compute the ratio of assessed to actual value applicable generally throughout the district and to apply this ratio to the property in question. If this procedure were to be adopted, each property owner appealing would have to

revalue every other property in the district. To put upon a property owner challenging an assessment such a burdensome and expensive method of asserting his rights would amount to a denial of justice. The argument of appellant which we have outlined apparently proceeds upon the assumption that tax assessments are a matter of formula, but they are not, they are a matter of judgment in each individual case. "Common sense and practical everyday business experience are the best guides for those intrusted with the administration of tax laws": P. & R. C. & I. Co. v. Northumberland Co. Comrs., 229 Pa. 460, 471. We agree with the statement of the learned judge of the court below who heard the case that if the method for which the city contends should be followed, it "would multiply the issues and augment the evidence for and against the appeal to an unwieldly and discordant bulk."

The city also says that the assessor took 60 per cent of *what in his opinion* was the value of the property, not 60 per cent of its actual value. As all values of real estate are a matter of opinion, the two things in the mind of the assessor were the same.

Complaints are made as to alleged errors in receiving testimony on the hearing and as to its sufficiency; there is no merit in any of them.

The order of the court below is affirmed at appellant's cost.