## F. W. Woolworth Company Tax Assessment Case.

584 

Argued November 28, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

 

 reargument refused October 25, 1967.

*T. Robert Brennan,* and *Brennan and Brennan,* for appellants.

*James Victor Voss,* Assistant County Solicitor, *Francis A. Barry,* First Assistant County Solicitor, and *Maurice Louik,* County Solicitor, for Board, appellee.

OPINION BY MR. JUSTICE COHEN, September 26, 1967:

This is an appeal by F. W. Woolworth Company, lessee, and Liberty Sixth, Inc., owner (taxpayer), with respect to the assessment of their property in the City of Pittsburgh for the triennial period 1960, 1961 and 1962.

Testimony was originally taken before the court below on May 6, 1964. The Board of Property Assessment, Appeals and Review of Allegheny County (Board) introduced the assessment of $1,493,730 and rested. The taxpayers called a real estate broker as an expert witness. He testified that the market value of the property was $975,000; in addition, he testified that the ratio of assessed value to market value of six

similar properties ranged from 75.4% to 110.6% (as compared to 153% for the property in question). The taxpayers also produced testimony from Dr. Raymond L. Richman, an economist, who had studied extensively all sales of real estate in Allegheny County for 1958, 1959 and 1960 in order to compute a common level ratio of assessed values to market values throughout the county. He testified that this ratio was 41.4% for 1959. The Board then called several of its employees as witnesses, but none of their testimony went to either the fair market value of the subject property or to the common level ratio of assessed value to market value in the county.

The court below, in summarizing these proceedings, referred to the testimony of taxpayers' expert witness in the following language: "[He] has a thorough knowledge of real estate in the downtown area of the City of Pittsburgh matched by very few other realtors. He had made a thorough study of the property in question and considered the size, location of the lot, the type of structure, the age, the rental value, the use, the sales of the variety store tenant, and the sales and holding prices of other property in the area." The court concluded its summary on fair market value as follows: "The Court carefully considered and weighed the testimony especially that of the taxpayers' expert witness concerning market value and based upon the fair weight of the evidence determined that the fair market value of the property in question as of December 31, 1959, was $1,313,700. . . ."

The lower court then reviewed the uniformity testimony and set the ratio at 100%. In doing so, it recognized the validity of the Richman study but decided to refer to the testimony of taxpayers' expert regarding the six similar properties as a basis for setting the ratio. Therefore, it determined the assessment to be $1,313,700. Taxpayers appealed.

The contentions of the taxpayers are (1) that the lower court, having found their expert to be a competent and credible witness, could not refuse to accept his estimate of fair market value and set its own in the absence of countervailing testimony from the Board and (2) that the lower court could not reject the admittedly correct common level ratio of assessed value to market value for the county as a whole in favor of a ratio determined by it from a consideration of the situation of six similar properties.

We agree with both of taxpayers' contentions. No fair reading of the record will support the Board's contention that the court below basically rejected the market value testimony of taxpayers' expert witness. In fact, the opposite is true; and the Board proceeded at its peril in not producing *any* testimony whatsoever to refute this expert opinion. In such a situation we have clearly held that the taxpayers' evidence must be accepted. *Deitch Company v. Board of Property Assessment*, 417 Pa. 213, 209 A. 2d 397 (1965); *McKnight Shopping Center, Inc. v. Board of Property Assessment*, 417 Pa. 234, 209 A. 2d 389 (1965); *Borg-Warner Corp. v. York Tax Review Bd.*, 206 Pa. Superior Ct. 172, 213 A. 2d 127 (1965). The court is not an expert appraiser; it can act only upon credible and competent evidence presented to it. Having found such evidence before it, the lower court here, consistent with the principles expressed in the above-cited opinions, could only consider the assessment of the Board to have been rebutted and must determine the fair market value to be $975,000. If the Board disagreed with this value, it was its responsibility to produce rebuttal testimony of similar character. Having not done so, it is in no position to complain.

Second, we hold that a valid study of the ratio of assessed value to market value covering the entire taxing district is the preferred way of determining a com-

mon level ratio. Since uniformity has as its heart the equalization of the ratio among *all* properties in the district, *Deitch,* supra, a determination based upon the district as a whole necessarily is more conducive to achieving a constitutional result than one based upon a few properties. Since the court below accepted the Richman study as valid and we have agreed with this determination (see our opinion in the *Massachusetts Mutual Life Insurance Company,* 426 Pa. 566, 235 A. 2d 790 (1967)), a common level ratio at 41.4% was established for Allegheny County for the triennium involved here.

Applying these factors to this case, we determine the fair market value of the property to be $975,000 and the assessed value to be $403,650. The uncontradicted testimony shows the breakdown of fair market value to be $300,000 on the building and $675,000 on the land. Therefore, the assessed value for each respectively, must be $124,200 (building) and $279,450 (land).

The order of the court below is vacated, and the case is remanded to the court below with instructions to enter an order directing the Board to correct the assessment of the subject property in accordance with this opinion.

Mr. Chief Justice BELL concurs in the result.

Mr. Justice EAGEN dissents.