**Ronald HROMISIN and Nadine Hromisin, His Wife,
Appellants,**

v.

**BOARD OF ASSESSMENT APPEALS
OF LUZERNE COUNTY.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 1997.

Decided Sept. 18, 1998.

Reargument and/or Reconsideration Denied Nov. 10, 1998.

Francis J. Hoegan, Wilkes–Barre, for appellants.

Michael R. Kostelansky, Wilkes–Barre, for appellee.

Before FRIEDMAN and LEADBETTER, JJ., and NARICK, Senior Judge.

LEADBETTER, Judge.

Appellants, Ronald and Nadine Hromisin, appeal from an order of the Court of Common Pleas of Luzerne County denying their tax assessment appeal. We affirm.

Appellants reside in Luzerne County, Pennsylvania, in a residential development known as Willow View. For the taxable year 1996, the taxing authority attached to appellants' residential property an assessed value of $13,350.00, reflecting $2,540.00 for land and $10,810.00 for improvements. Appellants filed a petition with the Board of Assessment Appeals of Luzerne County requesting review of the assessment, pursuant to Section 8 of the "Assessments Law," Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. § 5349. The petition was denied. The Hromisins appealed to the Court of Common Pleas of Luzerne County, pursuant to Section 9 of the Assessments Law, 72 P.S. § 5350.

On October 28, 1996, the trial court held a *de novo* hearing. The assessment record was admitted into evidence; it showed the market value of appellants' property to be $178,000.00 and the assessed value to be $13,350.00. Thereafter, appellants presented the expert testimony of Thomas M. Leighton, a state certified residential appraiser.

Leighton testified that he had inspected the subject property on October 10, 1996, in order to make an analysis as to the market value and that he had prepared a report in connection with that analysis. Leighton's report was introduced into evidence without objection. Leighton opined that the property's assessed value should be $10,400.00,[1] a value nearly $3,000 less than the assessment upheld by the Board. Leighton's conclusion was drawn from a four-step process outlined in his report. First, he inspected the exterior and interior of the subject property. Second, he determined the estimated market value of the subject property by applying three recognized approaches to value, but relying most favorably on the sales comparison analysis. He stated that the subject property's high estimated market value was $205,000, and its low estimated market value was $195,000.00, and concluded that the market value of the subject premises, as of October 10, 1996, was $200,000.00. Third, Leighton inspected the exterior of twelve properties similar to the subject property in location, site area, design, quality of construction and physical condition. Based on his exterior inspection and his familiarity with market values in surrounding communities and the subject area, Leighton estimated a high and low market value for each of the twelve comparable properties.[2] Fourth

1. This figure reflects $2,400.00 for land and $8,000.00 for improvements.

2. Leighton's analysis was as follows:

| ADDRESS | MARKET VALUE (HIGH) | MARKET VALUE (LOW) | ASSESSED VALUE |
|---|---|---|---|
| *Subject Property*: 9 Osborne Drive | $205,000 | $195,000 | $13,350 |
| *Comparables*: 33 Osborne Drive | $230,000 | $220,000 | $10,430 |
| 32 Osborne Drive | $210,000 | $200,000 | $10,020 |
| 40 Osborne Drive | $185,000 | $175,000 | $ 9,050 |
| 102 Willow Road | $225,000 | $215,000 | $11,150 |
| 4 Valley View Ter. | $310,000 | $290,000 | $15,600 |
| 6 Osborne Drive | $185,000 | $175,000 | $11,810 |
| 11 Osborne Drive | $205,000 | $195,000 | $10,480 |
| 13 Osborne Drive | $210,000 | $200,000 | $10,900 |
| 29 Osborne Drive | $215,000 | $205,000 | $11,550 |

and finally, Leighton compared the estimated market values of the comparable and subject properties to the assessed values applied by the taxing authority and stated that the ratios of the comparable properties ranged from a low of 4.53 to a high of 5.7,[3] with the median assessed value ratio being approximately 5.05 to 5.37. In contrast, the subject property's assessed valuation ratio was 6.51 to 6.85. Leighton concluded that the subject's assessed value ratios were excessively higher than the similar neighboring properties. Consequently, Leighton proposed multiplying $200,000.00 (estimated market value of subject property) by .052 (ratio of 5.2 falls between the median assessed value ratio range of 5.05 to 5.37) to reach a new assessed value of $10,400.00 for the subject property.

The Luzerne County Board of Assessment Appeals (Board) presented the testimony of Thomas Morrissey, a witness with stipulated expert qualifications, to explain how the taxing authority had valued the subject property for tax purposes.[4] According to Morrissey, "The assessment was arrived at by a value applied to the square footage of the living space in the property and in addition, to an attached garage." (N.T. at 13). On cross-examination, Morrissey clarified that he used the value cost of construction set forth in reports supplied by appellants. He explained that the Board's method of determining assessed value is to multiply the "value cost of construction" by the common level ratio [5] of seven and one-half percent.

On January 16, 1997, the trial court entered an order denying the taxpayers' appeal. In a brief opinion filed in support of its order, the trial court explained its decision as follows:

## OPINION

### FACTS

Petitioners, Ronald Hromisin and Nadine Hromisin reside at 9 Osborne Dr., Yatesville, Luzerne County, PA. Petitioners filed an appeal on their assessment figure for taxable year, 1996. The petition was denied and the petitioners appealed to the court of Common Pleas.

On January 16, 1997, this Court, after hearing, denied the Appeal.

### DISCUSSION

In the instant case, the Court finds the Board of Assessment Appeals has complied with all of the applicable statutory provisions in arriving at the fair market value of the subject premises and in applying the correct ratio.

The court finds the total assessment to be $13,350.00 which reflects $2,540.00 for Land and $10,810.00 for Improvements.

The court finds that the market value is $170,000.00 [sic] [6]; and that the ratio of 7.5 applied to this property is in accordance with the laws of Pennsylvania.

### END OF OPINION

*Hromisin v. Board of Assessment App. of Luzerne County,* Court of Common Pleas, No. 96–06057 (Luzerne Cty., May 9, 1997).

Before this court, appellants contend that the assessment applied to their property vio-

| | | | |
|---|---|---|---|
| 120 Wynnchurch Cir. | $260,000 | $240,000 | $14,000 |
| 206 Willow Road | $350,000 | $335,000 | $19,000 |
| 36 Osborne Drive | $230,000 | $220,000 | $12,560 |

3. Our review of the appraisal report revealed a high of 5.83, not 5.7, as shown for the comparable property situated at 120 Wynnchurch Circle.

4. We infer from Morrissey's testimony that he was the taxing authority's assessor, but his official capacity, if any, is not identified in the record.

5. The common level ratio is the ratio of assessed value to current market value used generally in the county as last determined by the State Tax Equalization Board. Section 1.1 of the Assessments Law, 72 P.S. § 5342.1.

6. We assume this to be a typographical error intended to be $178,000.00, since the trial court affirmed the Board's values, and since the common level ratio of 7.5 applied to the Board's fair market value of $178,000 would yield the assessed value found by the court.

lates the principle of uniformity, and thus the trial court erred in dismissing their appeal. They also challenge the taxing authority's use of construction costs as the sole basis for determining market value.

A common level of assessment is required by Article VIII, Section 1 of the Pennsylvania Constitution, which states that, "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax ..." Our courts have interpreted the uniformity requirement as, "the principle that a taxpayer should pay no more or no less than his proportionate share of the cost of government." *Deitch Company v. Board of Property Assessment,* 417 Pa. 213, 220, 209 A.2d 397, 401 (1965).

■■■ An assessment of a parcel of property is calculated using two factors: (1) fair market value and (2) a ratio or percentage which, when applied to fair market value, yields the assessed value upon which property taxes are based. This court noted in *Appeal of Armco, Inc.,* 100 Pa.Cmwlth. 452, 515 A.2d 326 (1986), *allocatur denied,* 516 Pa. 643, 533 A.2d 714 (1987) that:

> [T]he constitutional mandate requiring uniformity is met where the taxing authority assesses all property at the same percentage of its actual value; application of such a uniform ratio assures each taxpayer will be held responsible for its pro rata share of the burden of local government.

*Id.* at 329. Obviously, however, perfect uniformity is not possible since property values fluctuate continuously, and far more frequently than taxing authorities could conceivably perform county-wide reassessments. Thus we look to the "common level" within the taxing district as the constitutional standard against which the county's applied, or predetermined ratio must be measured. Put another way, the "common level" or average ratio may be said to represent each taxpayer's fair or proportionate share of the tax burden, and our constitution requires no

more than that this share not be materially exceeded. *Deitch,* 417 Pa. at 219–20, 209 A.2d at 401.

Traditionally, our courts determined the common level ratio by expert testimony consisting of statistical analyses. *See, e.g., Massachusetts Mutual Life Ins. Co. Tax Assessment Case,* 426 Pa. 566, 569, 235 A.2d 790, 791 (1967); *Westinghouse Elec. Corp. v. Board of Assessment,* 539 Pa. 453, 458, 652 A.2d 1306, 1313 (1995)[7]. However, in 1982 our legislature amended the Assessment Law, and in so doing established a mechanism which both enforces this minimum constitutional level of uniformity, and obviates the necessity for taxpayers to resort to expensive expert analyses in order to maintain a uniformity challenge. The General County Assessment Law now defines the common level ratio, as "the ratio of assessed value to current market value used generally in the county as last determined by the State Tax Equalization Board pursuant to the act of June 27, 1947, P.L. 1046, No. 447, referred to as the State Tax Equalization Board Law." Section 102 of the Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–102. The State Tax Equalization Board Law,[8] mandates the STEB Board to calculate the average common level ratio of assessed to actual market value for each county on an annual basis, using data from all arms' length sales transactions during the relevant period, supplemented by independent appraisal data and other relevant information.[9] The Assessments Law further provides that if the predetermined ratio applied by the taxing authority varies by more than 15% from this STEB common level ratio, the court is mandated to apply the STEB common level ratio to the fair market value to calculate the assessed value of the property. 72 P.S. § 5350(a.1).

In this manner the STEB common level ratio[10] serves as the standard against which the ratio applied to a given property may be

---

7. Although decided in 1995, the dispute as to common level ratio in *Westinghouse* related to tax years prior to 1982.

8. 72 P.S. §§ 4656.1–4656–17.

9. Section 16.1 of the Law, 72 P.S. § 4656.16a; 61 Pa.Code, §§ 603.31 and 603.41.

10. The STEB common level ratio was originally devised as a method for distributing school aid equally among the various counties.

measured to determine whether the particular property owner is paying more than his fair share, i.e., more than the average property owner's tax burden in his county. Thus the Assessments Law provides an essentially complete mechanism of assuring uniformity within each county. If a taxpayer is paying more than his proportionate share of real estate taxes because an inflated market value has been assigned to his property, he may challenge this value and, if his evidence is accepted, this component of the formula will be adjusted and the taxes reduced accordingly. If, on the other hand an inflated assessment results from application of a predetermined ratio out of proportion with the current average ratio paid in the county as calculated by STEB, then the taxpayer is entitled to have the STEB ratio applied.

■■■ With these principles in mind, we turn to the merits of the uniformity challenge made here, and see no question that it was properly rejected by the trial court. According to the taxpayers' own expert, the fair market value of their property was *understated* by the taxing authorities. Further, he testified that when the actual ratio of assessed to fair market value was calculated for the property it was *less* than the county-wide average determined by STEB. Where, as here, property owners are paying less than the average tax burden within the county, they may obtain no relief under the uniformity doctrine by showing that some of their neighbors are paying an even lower proportion of their fair share than the appellants. As the court noted in *Deitch:*

> [T]axpayer is not entitled to have his assessment reduced to the lowest ratio of assessed value to market value to which he could point in the taxing district if such

lowest ratio does not reflect the common assessment level which prevails in the district as a whole.

417 Pa. at 219, 209 A.2d at 401.

■■■ Aside from the fact that the *conclusions* reached by taxpayers' expert here do not support a uniformity challenge, we must comment briefly upon the nature of the methodology employed. First, there is a serious question whether the approach commonly used to mount a uniformity challenge prior to the 1982 amendments, that is to offer an expert to compute a common level ratio based upon tax records within the county, is any longer permissible in light of the current statutory mandate that the STEB common level ratio be used.[11] Second, even when such expert testimony was the only form of evidence available, our courts clearly held that at the heart of the uniformity requirement lay equalization of the ratio among *all properties in the district.* Thus, our Supreme Court held:

> [A] valid study of the ratio of assessed value to market value covering the entire taxing district is the preferred way of determining a common level ratio. Since uniformity has as its heart the equalization of the ratio among *all* properties in the district, *Deitch,* supra, a determination based upon the district as a whole necessarily is more conducive to achieving a constitutional result than one based upon a few properties.

*Appeal of F.W. Woolworth Company,* 426 Pa. 583, 586–87, 235 A.2d 793, 795 (1967). *See also Deitch,* 417 Pa. at 219, 209 A.2d at 401.[12] When viewed in this light, the flaw in the appellants' analysis is obvious. Taxpayers' expert relied upon only a handful of "comparable"[13] properties, almost all within the Wil-

---

11. Although there is dictum to the contrary in *Albarano v. Board of Assessment and Revision of Taxes and Appeals, Lycoming County,* 90 Pa. Cmwlth. 89, 494 A.2d 47, 49 (1985), it was based upon cases decided years before the amendments were passed. Suffice it to say that we need not decide this issue here.

12. Of course, before use of the STEB ratio, the inordinate expense of analyzing comprehensive county-wide statistics resulted in many uniformity challenges based upon data which fell far short of the ideal. Indeed, in *Harleigh Realty*

*Co.'s Case,* 299 Pa. 385, 149 A. 653, (1930), the court acknowledged that imposing such a burden on taxpayers seeking to enforce their right to uniformity would be unreasonably expensive. *Id.* at 389–90, 149 A. at 655.

13. In this regard *Deitch* noted:

> In determining, however, whether the constitutional requirement with respect to uniformity has been complied within a taxing district, *all* properties are comparable in constructing the appropriate ratio of assessed value to market value.

low View development, ignoring the balance of Luzerne County. Accordingly, the trial court properly rejected this argument and instead applied the STEB common level ratio in accordance with the statutory mandate.

Property owners also challenge the methodology used by the taxing authority's expert in computing fair market value. Ordinarily, we would be constrained to remand the case to the common pleas court because its lack of credibility findings makes it impossible for us to tell upon what basis the court adopted the authority's fair market value determination. However, we do not read taxpayer's argument as a challenge to the Board's fair market value *per se*, but only as a further argument in support of its uniformity challenge to the applied ratio. The fact that the Board (and the court) found a fair market value *less* than that proffered by taxpayer's expert buttresses the conclusion that remand for further findings on fair market value is neither necessary nor within the scope of relief sought by the property owners in this appeal.

Accordingly, we affirm the order of the court of common pleas.

### ORDER

AND NOW, this 18th day of September, 1998, the order of the Court of Common Pleas of Luzerne County, dated January 16, 1997, is hereby affirmed.

*Deitch,* 417 Pa. at 213, 209 A.2d at 402 (emphasis added).