## DOWNINGTOWN AREA SCHOOL DISTRICT

### v.

## CHESTER COUNTY BOARD OF ASSESSMENT APPEALS and Lionville Station S.C. Associates

### Appeal of Lionville Station S.C. Associates.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 4, 2002.

Decided March 20, 2003.

---

John K. Fiorillo, West Chester, for appellant.

Jeffrey R. Sommer, Exton, for appellees.

BEFORE: COLINS, President Judge, McGINLEY, SMITH–RIBNER, PELLEGRINI, FRIEDMAN, COHN and SIMPSON, Judges.

OPINION BY JUDGE McGINLEY.

Lionville Station S.C. Associates (Lionville) appeals from an order of the Court of Common of Chester County (trial court) that assessed the value of Tax Parcel No. 33–01–0032.0000 (Property) for the 2000 tax year at $8,500,000.00.

On March 17, 1999, the Shoppes at Lionville Station, LLP, a Pennsylvania Limited Liability Partnership, sold the Property, an 83,488 square-foot neighborhood shopping center, to Lionville for a purchase price of $10,422,978.23. On January 20, 2000, the Chester County Board of Assessment Appeals (Board) assessed the Property at $6,500,000.00 for the 2000 tax year.

The Downingtown Area School District (District) appealed and a *de novo* hearing was held. Before the trial court the parties stipulated to the following: 1) that the fair market value of the Property for the 2000 tax year was $8,500,000.00; 2) that the State Tax Equalization Board (STEB) ratio equaled 85.2% of market value for the 2000 tax year; and 3) that the predetermined ratio used to assess taxpayers in Chester County was 100% of fair market value for the 2000 tax year.

Lionville presented the testimony of Robert R. McRae (McRae), Chief Assessor, Richard Anthony Fazio (Fazio), Chief Financial Officer for the School District, David Shooster (Shooster) owner of the Property, and Scott Eiffes (Eiffes), a commercial real estate appraiser.

McRae testified that the Property consisted of 83,488 square feet and was assessed at $6,500,000.00 which amounted to $77.86 per square foot. Notes of Testimony, June 5, 2001, (N.T. 6/5/01) at 14; Reproduced Record (R.R.) at 23a. McRae stated that Chester County has a predetermined ratio of a 100% of market value and that under the "predetermined ratio scenario" the Property should be assessed at $8,500,000.00. N.T. 6/5/01 at 24; R.R. at 33a.

Fazio testified that the School District appealed the assessment after he compared the transfer price of the Property to its assessed value. N.T. 6/5/01 at 27; R.R. at 36a. Fazio also stated that the School District plans to appeal the assessment of other commercial properties. N.T. 6/5/01 at 27; R.R. at 36a.

Shooster testified he believed the original assessment of the Property at $5,833,040.00 was accurate but that he agreed to the Board's increase to $6,500,000.00 "just to resolve a dispute, so we would not go through what we're going through here today." N.T. 6/5/01 at 39; R.R. at 48a. Shooster acknowledged that he paid $10,422,978.23 for the property and that "I think it is worth that much money." N.T. 6/5/01 at 42; R.R. at 51a.

Eiffes testified that he applied the ratio of assessed value to market value to seven commercial properties (shopping centers) similar to the Property and that the assessed value of these commercial properties was lower than the Property. Notes of Testimony, June 6, 2001, (N.T. 6/6/01) at 14, 31, and 37; R.R. at 63a, 80a, and 86a. However, Eiffes testified on cross that he did not conduct a "complete appraisal" on these properties but "completed an exterior inspection similar to a drive-by appraisal." N.T. 6/6/01 at 43; R.R. at 92a. Finally, Eiffes stated that shopping center owners paid less taxes proportionately than single-family property owners and that "[i]t appears that that would be an inequity in the system." N.T. 6/6/01 at 47; R.R. at 96a.

The trial court concluded that the proper assessment of the Property for the 2000 tax year was $8,500,000.00:

> Lionville argues that in this case setting the assessment at the fair market value, while consistent with the County's 100% ratio, results in an assessment which is unconstitutional for lack of uniformity. . . .
>
> Lionville's evidence goes entirely to the issue of whether its property, a shopping center, is uniformly assessed as compared to other shopping centers. In our view, that question is irrelevant as shopping centers do not constitute a class for purposes of considering the uniformity of tax assessments. . . . Indeed, the very argument advanced by Lionville would result in an improper assessment. Taxing commercial, industrial, and residential real estate differently has been held to violate the Uniformity Clause. Fidel-

ity Bank, N.A. v. Com. By and Through Dept. of Revenue, 165 Pa.Cmwlth. 524, 645 A.2d 452 (1994). Therefore, we found Lionville's position to be without merit and we set the assessment in accordance with the stipulated fair market value.

For the foregoing reasons and those reasons set forth in the footnote [1] to our decision, we rendered the decision from which this appeal has been taken.

Opinion of the Trial Court, March 26, 2002, at 2–4.

On appeal [2], Lionville again contends that the trial court's application of the predetermined ratio of 100% to the Property violated the principles of uniformity and equal protection.[3] Succinctly, Lionville asserts that its shopping center was assessed higher than other shopping centers in Chester County and therefore the assessment violated the uniformity clause.

 Article VIII, Section 1 of the Pennsylvania Constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." "In matters of taxation, allegations of violations of the equal protection clause of the United States Constitution and the uniformity clause of the Pennsylvania Constitution are analyzed in the same manner, requiring equality of burden upon classes or things subject to the tax in question." *Equitable Life Assurance Society of the United States v. Murphy*, 153 Pa.Cmwlth. 338, 621 A.2d 1078, 1086 n. 12 (1993), *citing Aldine Apartments, Inc. v. Commonwealth*, 493 Pa. 480, 426 A.2d 1118 (1981). Further, "a

---

1. The trial court stated the following in footnote no. 1 of its decision of December 28, 2001:

 The parties stipulated to the fair market value of the property. We applied the Chester County ratio of 100% to set the assessment. The only issue which we needed to resolve was whether this assessment is impermissibly not uniform. Owner [Lionville] contends, but we do not agree, that this assessment results in an unconstitutional lack of uniformity. In the first place, we believe that the existence of the STEB ratio has superceded former methods of determining uniformity or lack thereof. Second, 'the heart of the uniformity requirement [is] equalization of the ratio among all properties in the district.' Hromisin v. Board of Assessment Appeals of Luzerne County, 719 A.2d 815, 819 (Pa. Cmwlth.1998), ... allocatur denied, 558 Pa. 634, 737 A.2d 1227 (1999). Comparative values of shopping centers may play a part in determining fair market value but that issue was not before us as the parties have stipulated to the fair market value of the property here in question.
 Decision of the Trial Court, December 28, 2001, at 1, n. 1.

2. This Court's review in a tax assessment appeal is limited to a determination of whether the trial court committed and error of law or abused its discretion. *Richland School District v. County of Cambria Board of Assessment Appeals*, 724 A.2d 988 (Pa.Cmwlth.1999).

3. Lionville's Statement of Questions Involved states:

 A. Whether a 100% assessment of the Property in question violates the uniformity requirements of the Pennsylvania Constitution when similar properties are assessed at substantially lower percentages of their respective fair market values.
 B. Whether a 100% assessment of the Property in question violates the equal protection clause of the XIV Amendment to the United States Constitution when similar properties are assessed at substantially lower percentages of their respective fair market values.
 C. Whether the trial court should have applied the common level ratio of 85.2% to the value of the Property instead of the 100% predetermined ratio.
 As noted, Lionville's arguments are essentially a uniformity and equal protection challenge to the assessment.

taxpayer alleging that the administration of a tax violates its rights to be taxed uniformly with others of its class must demonstrate deliberate, purposeful discrimination in the application of the tax before constitutional safeguards are violated." *In re Appeal of Armco, Inc.*, 100 Pa.Cmwlth. 452, 515 A.2d 326, 329 (1986), *citing Commonwealth of Pennsylvania v. Westinghouse Elec. Corp.*, 478 Pa. 164, 386 A.2d 491 (1978).

Section 1.1 of the "Assessments Law" (Law)[4], 72 P.S. § 5342.1 defines the term "common level ratio" as "[t]he ratio of assessed value to current market value used generally in the county as last determined by the State Tax Equalization Board pursuant to the act of June 27, 1947 (P.L. 1046, No. 447), referred to as the State Equalization Board Law."[5] (footnotes omitted).

Section 1.1 of the Law, 72 P.S. § 5342.1 also defines the term "established predetermined ratio" as "[t]he ratio of assessed value to market value established by the board of county commissioners and uniformly applied in determining assessed value in any year."

Finally, Section 8(d.2) of the Law, 72 P.S. § 5349 provides:

> The board, after determining the market value of the property, shall then apply the established predetermined ratio to such value *unless the corresponding common level ratio published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year on appeal before the board varies more than fifteen percent (15%) from the established predetermined ratio,* in which case the board shall apply the

same common level ratio to the market value of the property. (emphasis added).

In *Hromisin v. Board of Assessment Appeals of Luzerne County*, 719 A.2d 815, 819 (Pa.Cmwlth.1998), *allocatur denied*, 558 Pa. 634, 737 A.2d 1227 (1999), this Court reviewed the 1982 amendments to the Law and noted:

> Aside from the fact that the conclusions reached by taxpayers' expert here do not support a uniformity challenge, we must comment briefly upon the nature of the methodology employed. First, there is serious question whether the approach commonly used to mount a uniformity challenge prior to the 1982 amendments, that is to offer an expert to compute a common level ratio based upon tax records within the county, is any longer permissible in light of the current statutory mandate that the STEB common level ratio be used. Second, even when such expert testimony was the only form of evidence available, our courts clearly held that at the heart of the uniformity requirement lay equalization of the ratio among *all properties in the district.* Thus, our Supreme Court held:
>
> > [A] valid study of the ratio of assessed value to market value covering the entire taxing district is the preferred way of determining a common level ratio. Since uniformity has as its heart the equalization of the ratio among *all* properties in the district, *Deitch*, supra, a determination based upon the district as a whole necessarily is more conducive to achieving a constitutional result than one based upon a few properties.
>
> *Appeal of F.W. Woolworth Company*, 426 Pa. 583, 586–87, 235 A.2d 793, 795

---

4. Act of June 26, 1931, P.L. 1379, *as amended.* Section 1.1 was added by the Act of December 13, 1982, P.L. 1165.

5. This ratio is commonly referred to as the STEB ratio.

(1967). See also *Deitch*, 417 Pa. at 219, 209 A.2d at 401, (emphasis in original and footnotes omitted.)

 Here, there is no dispute that Chester County conducted a countywide reassessment in 1996 at which time the County Commissioners set the established predetermined ratio at 100% of market value. Also, there is no dispute that the purchase price of the Property was $10,422,978.23 and that the STEB ratio for 1999 was 89.8% and that the STEB ratio for 2000 (the year of the tax appeal) was 85.2%. *See* Statement of Matters Complained of on Appeal, February 11, 2001, I., *Background* at 2. Because the STEB ratio (85.2%) varied less than 15% of the established predetermined ratio of 100%, the trial court properly assessed the fair market value of the Property at 100% or

$8,500,000.00. "[T]he constitutional mandate requiring uniformity is met where the taxing authority assesses all property at the same percentage of its actual value; application of such a uniform ratio assures each taxpayer will be held responsible for its pro rata share of the burden of local government." *Appeal of Armco*, 515 A.2d at 329, *citing Appeal of Johnstown Associates*, 494 Pa. 433, 431 A.2d 932 (1981).

Lionville persists that assessments of similar shopping centers were actually at less than the 100% predetermined ratio of the fair market value and ranged from 36% to 63% of the fair market value. McRae and Eiffes testified that they arrived at these various percentages of market value based on either the sale price or the appraisal of the estimated value. Critically, McRae [6] and Eiffes [7] stated on

**6.** James E. McErlane (McErlane), attorney for the School District, to McRae:

> Q: And did the assessment office collect data on all 167,000 properties in that two year period?
> A: Cole–Layer–Trumble, the contractor did....
> Q: Okay. And, sir, do you know whether or not Cole–Layer–Trumble did what a professional appraiser would call a formal appraisal on any of those properties?
> A: No, they did not. This was a mass appraisal.
> Q: So there was no appraisal per se on any property, but rather a big picture look?
> A: That's correct.
> N.T. 6/5/01 at 23; R.R. at 32a.

**7.** The following discussion occurred:

> McErlane: Not to be redundant, but it's real clear that you did not do an appraisal as that term is defined by the American Institute on any of these properties, with the possible exception of the subject property?
> Eiffes: I have not done a complete appraisal on these properties. I have done a limited valuation, the scope being what I've described to the Court this morning, for comparative purposes within this chart.

> McErlane: Does the American Institute define an appraisal?
> Fiorillo: Objection.
> Court: Basis?
> Fiorillo: He testified that he ... has not performed an appraisal, so there's no need to get into what an appraisal is.
> Court: Well, their point would be if he hasn't done an appraisal, that the value of his whole testimony is either limited or not worth anything at all, and for that purpose it's just as important to know what he didn't do as what he did do. Overruled.
> ....
> Court: ... [Y]ou gave an opinion of value based on some very sketchy information. Why is that not an appraisal?
> Eiffes: What I said was I did not conduct a complete appraisal.
> Court: What's a complete appraisal?
> Eiffes: A complete appraisal would include the development of the sales comparison approach, the income approach and the cost approach.
> Court: That's your definition?
> Eiffes: That's correct.
> Court: Does that differ in any substantial way from the Appraisal Institute's definition?
> Eiffes: I do not believe so.
> Court: And you didn't do that for these properties?

cross-examination that no official appraisal was conducted regarding these commercial shopping centers to support the value figures that were entered into evidence.

Further, Fazio testified that the School District was in the process of appealing the assessments of other shopping centers because they believed they were under assessed.[8] In fact, Shooster testified that if the other shopping centers were reassessed he would have no objection with the Property's current assessment:

Q: Well, if the school district appealed those other shopping centers and the assessments on all those shopping centers were raised, then you wouldn't have a complaint, would you?

Eiffes: I did not perform a complete appraisal. What I did was a limited valuation.
N.T. 6/6/01 at 38–42; R.R. at 87a–91a.

8. John K. Fiorillo (Fiorillo), Lionville's attorney, to Fazio:
Q: Okay. And, however, isn't it true that the school district is currently investigating filing appeals on other commercial properties within its district similar to the Lionville Station [Property]?
A: Yes.
Q: What properties are you looking at?
A: There's property in Downingtown Borough Springton Meadows. We've appealed....
....
Q: Are you considering filing an appeal for the Lionville Village Center?
....
A: What initiates my decision to appeal is when we compare market value or sales price, if you will, to assessed value. So usually my determination is generated when we have information on what the sales price of a property would be.
....
Q: Well, are there any other circumstances under which you would initiate an appeal?
A: If I had knowledge to the value of the property other than the assessed value.
Q: Okay. And does the school district undertake any investigation of the properties

A: No, I wouldn't.
N.T. 6/5/01 at 40: R.R. at 49.

Accordingly, this Court affirms.[9]

## ORDER

AND NOW, this 20th day of March, 2003, the order of Court of Common Pleas of Chester County in the above-captioned matter is affirmed.

Dissenting opinion by Judge FRIEDMAN.

## DISSENTING OPINION BY JUDGE FRIEDMAN.·

I respectfully dissent. The question presented here is whether the Court of Common Pleas of Chester County (trial

within its boundaries to determine if a property is under assessed, other than reviewing the sale prices?
A: We're discussing that.
....
Q: Okay. Are you discussing with other school districts whether or not to appeal various assessments of commercial property?
A: Yes, sir.
N.T. 6/5/01 at 27 and 29–31; R.R. at 36a and 38a–40a.

9. Because of this Court determination that the assessment of the Property did not violate the uniformity clause, we need not address Lionville's remaining issue that the School District failed to present any evidence before the trial court. In *Deitch Company v. Board of Property Assessment*, 417 Pa. 213, 221, 209 A.2d 397, 402 (1965), our Pennsylvania Supreme Court noted:

The procedure requires that the taxing authority first present its assessment record into evidence. Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the tax body prevails.

Here, the trial court found that Lionville failed to produce sufficient evidence to successfully challenge the validity of the assessment.

court) failed to consider relevant evidence in determining that the "established predetermined ratio"[1] of 100% in this case does not violate the tax uniformity provision in Article VIII, Section 1 of the Pennsylvania Constitution.[2] Relying on the rulings of the Pennsylvania Supreme Court, which is the ultimate interpreter of the Pennsylvania Constitution,[3] I would conclude that the trial court erred in this regard.

## I. Supreme Court Case Law

In the case of *In re Brooks Building*, 391 Pa. 94, 101, 137 A.2d 273, 276 (1958), our supreme court stated that a taxpayer satisfies his burden of proving a property tax uniformity violation by producing "evidence of the market value of his property and of similar properties of the same nature in the neighborhood and by proving the assessments of each of those properties and the ratio of assessed value to actual or market value."[4]

Subsequently, in *Deitch Company v. Board of Property Assessment, Appeals and Review of Allegheny County*, 417 Pa. 213, 223, 209 A.2d 397, 402–03 (1965) (emphasis added, citation omitted), our supreme court stated:

In determining ... whether the constitutional requirement with respect to uniformity has been complied with in a taxing district, all properties are compa-

rable in constructing the appropriate ratio of assessed value to market value. This is because the uniformity requirement of the Constitution of Pennsylvania has been construed to require that all real estate is a class which is entitled to uniform treatment. In establishing such ratio in a particular district, the property owner, the taxing authority, and the courts may rely on *any relevant evidence*.

*The evidence supplied by the taxpayer in Brooks illustrates one method by which a taxpayer can meet his burden of proving a lack of uniformity*, but we do not consider it to be the only method. It would be equally satisfactory to produce evidence regarding the ratios of assessed values to market values as the latter are reflected in actual sales of any other real estate in the taxing district for a reasonable period prior to the assessment date.

Thus, the court in *Deitch* validated the *Brooks* "similar properties" method of proving a uniformity violation under Article VIII, Section 1 of the Pennsylvania Constitution. This is because the ratio of assessed value to market value for *similar* properties in a taxing district is relevant to the question of whether the ratio is uniform for *all* properties within the taxing district.[5] *Id.*

---

1. The "established predetermined ratio" is the "ratio of assessed value to market value established by the board of county commissioners and uniformly applied in determining assessed value in any year." Section 1.1 of the Act of June 26, 1931, P.L. 1379, added by section 1 of the Act of December 13, 1982, P.L. 1165, *as amended*, 72 P.S. § 5342.1.

2. Article VIII, Section 1 of the Pennsylvania Constitution states, "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const., art. VIII, § 1.

3. *See Pennsylvania AFL–CIO v. Commonwealth*, 563 Pa. 108, 757 A.2d 917 (2000) (stating that the Pennsylvania Supreme Court is the ultimate interpreter of the Pennsylvania Constitution).

4. The ratio of assessed value to market value is known as the common level ratio. *Keebler Company v. Board of Revision of Taxes of Philadelphia*, 496 Pa. 140, 436 A.2d 583 (1981).

5. In other words, because *similar* properties are a sub-class of *all* properties, the ratio for similar properties is relevant.

Later, in *Keebler Company v. Board of Revision of Taxes of Philadelphia*, 496 Pa. 140, 143, 436 A.2d 583, 584 (1981), relying on *Deitch*, our supreme court explained that, because "[p]ractical considerations . . . prohibit the construction of a common-level ratio by way of an evaluation of the assessment and fair market value of each and every parcel of realty in the taxing district," the common-level ratio may be constructed by "any relevant evidence." [6]

The property in this case is a shopping center in Chester County with a market value of 8.5 million dollars. Lionville Station S.C. Associates (Lionville), the property owners, presented evidence that seven similar properties, i.e., other shopping centers in Chester County, were assessed at thirty-four to sixty-nine percent of their fair market values. Lionville argued that such evidence shows that the established predetermined rate of 100% violates the uniformity requirement of the Pennsylvania Constitution. The trial court refused to consider Lionville's evidence, stating that it was irrelevant. However, as indicated above, the Pennsylvania Supreme Court has specifically stated that such evidence is relevant. *Deitch; Brooks.*

Accordingly, I would vacate the trial court's determination and remand this case for consideration of Lionville's evidence.

6. In *Keebler*, the parties chose to utilize sales data to construct their proposed common level ratios. *Id.*

7. Act of June 27, 1947, P.L. 1046, *as amended*, 72 P.S. § 4656.1— § 4656.17.

8. Thus, a general equation for the STEB ratio would be the assessed value for **only** those properties **sold** within a county at a **bona fide** price in a calendar year (Assessed Value—BF Sold Properties) divided by the market value for **only** those properties **sold** within a county at a **bona fide** price in a calendar year (Market Value—BF Sold Properties):

## II. Statutory Provisions

### A. STEB Common Level Ratio

In 1982, after the court's decision in *Keebler*, the General Assembly amended the State Tax Equalization Board law (STEB Law) [7] to require the STEB to "establish, annually, prior to July 1, a common level ratio of assessed value to market value in each county for the prior calendar year." Section 7 of the STEB Law, 72 P.S. § 4656.7(9). In arriving at this ratio, the STEB was required to use "statistically acceptable techniques, including sales ratio studies." Section 16.1 of the STEB Law, 72 P.S. § 4656.16a(b).

The STEB's regulations indicate that the STEB has adopted the "sales ratio studies" approach to establish a common level ratio for each county for a particular calendar year. 61 Pa.Code § 603.1. In using this approach, the STEB gathers property sales data from each county, eliminating property transfers where the selling price is not bona fide or where the ratio of assessment to selling price is extremely high or low. 61 Pa.Code § 603.31(a), (b), (c), (d). Periodically, the STEB will compare the selling prices with appraised market values, which tend to be much more conservative. [8] 61 Pa.Code § 603.31(e), (f).

Significantly, the STEB common level ratio is *not* based on a study of the ratio of

Assessed Value—BF Sold Properties
Market Value—BF Sold Properties

In contrast, the equation for the common level ratio would be the assessed value of **all** properties, **including those sold at non-bona fide prices and those unsold**, within a county in a calendar year (Assessed Value All Properties) divided by the market value of **all** properties, **including those sold at non-bona fide prices and those unsold**, within a county in a calendar year (Market Value—All Properties):

*Assessed Value—All Properties*
Market Value—All Properties

assessed value to market value for *all* properties in a county. Rather, the STEB ratio is based *only* on the ratio for properties in a county that have been sold for a bona fide price during a particular calendar year. Moreover, the STEB ratio represents an *average* ratio for those properties; the STEB ratio does *not* represent the ratio at which *all* properties in a county are taxed in a particular calendar year.

Nevertheless, because our supreme court has approved the use of sales data to establish a common level ratio, the STEB ratio is relevant evidence for determining whether a county's established predetermined ratio is constitutional. However, the Pennsylvania Supreme Court has made clear that such is *not* the only relevant evidence. *Keebler; Deitch; Brooks.*

### B. Fifteen Percent Rule

By statute, any person aggrieved by an established predetermined ratio may appeal to the board of assessment appeals. Section 8(c) of the Assessments Law, Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. § 5349(c). In such an appeal, the board initially must determine the market value of the property and the STEB common level ratio. Section 8(d.1) of the Assessments Law, 72 P.S. § 5349(d.1). Then, if the established predetermined ratio does not vary by more than fifteen percent from the STEB common level ratio, the board must apply the established predetermined ratio to the market value; otherwise, the board must apply the STEB common level ratio to the market value.[9] Section 8(d.2) of the Assessments Law, 72 P.S. § 5349(d.2).

It appears to me that, in establishing the fifteen percent rule, the legislature was attempting to create a bright-line test for property tax uniformity. The fifteen percent rule certainly suggests that, if an established predetermined ratio does not vary by more than fifteen percent from the STEB common level ratio, there is property tax uniformity within a county. To the extent that the legislature has made the fifteen percent rule the *exclusive* method for determining property tax uniformity, the legislature has usurped the judiciary's function of interpreting the Pennsylvania Constitution. *See Pottstown School District v. Hill School,* 786 A.2d 312 (Pa. Cmwlth.2001) (stating that interpretation of the Pennsylvania Constitution is the province of the courts). Indeed, the Pennsylvania Supreme Court has *never* held that the *exclusive* method for determining property tax uniformity is to: (1) calculate an average assessment ratio from county sales data and (2) determine whether the established predetermined ratio varies by more than fifteen percent from that average assessment ratio.

Moreover, I believe that the fifteen percent rule for property tax uniformity actually defeats uniformity. "[T]he constitutional mandate requiring uniformity is met where the taxing authority assesses all property at the *same* percentage of its actual value; application of such a uniform ratio assures each taxpayer will be held responsible for its pro rata share of the burden of local government." *In re Appeal of Armco, Inc.,* 100 Pa.Cmwlth. 452, 515 A.2d 326, 329 (1986), *appeal denied,*

---

**9.** The board is a local administrative agency, and, as such, it has no power to determine whether the fifteen percent rule in section 8(d.2) of the Assessments Law violates the uniformity provision in Article VIII, Section 1 of the Pennsylvania Constitution. *See Allegheny Ludlum Steel Corporation v. Pennsylva-* *nia Public Utility Commission,* 67 Pa.Cmwlth. 400, 447 A.2d 675 (1982) (stating that an administrative agency cannot determine the constitutionality of its own enabling legislation), *aff'd,* 501 Pa. 71, 459 A.2d 1218 (1983). The board must comply with the statute.

516 Pa. 643, 533 A.2d 714 (1987) (emphasis added). Where an established predetermined ratio can vary by fifteen percent above *or* below the STEB's common level ratio, the ratio could vary by as much as *thirty* percent within a county. This is *not* uniformity.

### III. Hromisin

My position in this matter is not inconsistent with the holding in *Hromisin v. Board of Assessment Appeals of Luzerne County*, 719 A.2d 815 (Pa.Cmwlth.1998), *appeal denied*, 558 Pa. 634, 737 A.2d 1227 (1999). In *Hromisin*, this court held that taxpayers may obtain no relief where the evidence presented by the taxpayers' own expert establishes that the ratio of assessed value to market value for their property is *less than* the STEB common level ratio for the county for the prior calendar year. Here, the ratio of assessed value ($8.5 million) to market value ($8.5 million) is 100%, and the STEB ratio is 85.2%.[10] Because the 100% ratio is *not* less than the STEB ratio, the holding in *Hromisin* does not apply here.

Nor is my position contrary to the *dicta* in *Hromisin* regarding the "similar properties" evidence presented by the taxpayers' expert witness. First, *Hromisin* quotes from *Appeal of F.W. Woolworth Company*, 426 Pa. 583, 235 A.2d 793 (1967), stating that the *"preferred* way of determining a common level ratio" is to study the ratio for the entire taxing district. *Hromisin*, 719 A.2d at 819 (emphasis added). Thus, "similar properties" evidence is flawed to the extent that it does not consider *all* properties in a taxing dis-

trict. *Id.* However, *Hromisin* does *not* state that "similar properties" evidence is irrelevant.[11]

Second, *Hromisin* seems to suggest that "similar properties" evidence is unnecessary because the Assessments Law "provides an essentially complete mechanism of assuring uniformity within each county." *Hromisin*, 719 A.2d at 819. However, *Hromisin* does *not* state that the Assessments Law provides the *exclusive* mechanism for determining whether there is property tax uniformity within a county.

Third, *Hromisin* states that there is a "serious question" as to whether the approach commonly used to mount a uniformity challenge, i.e., to offer an expert to compute a common level ratio based upon tax records within the county, is any longer permissible. *Id.* However, *Hromisin* does *not* explore this "serious question" any further and does *not* conclusively resolve the matter.

Finally, with respect to the fifteen percent rule, *Hromisin* never addressed whether the rule was constitutionally valid. *Hromisin* did state that "perfect uniformity is not possible since property values fluctuate continuously...." *Id.* at 818. However, the question remains as to whether an assessment ratio fifteen percent above or below the STEB ratio satisfies *constitutional* uniformity.

President Judge COLINS joins this dissent.

---

**10.** I note that the 85.2% STEB ratio for the calendar year 2000 means that property values in the county have appreciated an average of 14.8% since 1996, the year of the last county-wide assessment.

**11.** If this court were to read *Hromisin* now to state that evidence which fails to consider all properties in a taxing district is irrelevant, then the STEB ratio would be irrelevant because it considers only those properties that have been sold for a bona fide price during a particular calendar year.