**[J-52-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| GM BERKSHIRE HILLS LLC AND GM OBERLIN BERKSHIRE HILLS LLC, | : | No. 16 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Commonwealth Court at No. 930 CD |
| | : | 2020 dated July 8, 2021 Affirming |
| | : | the Order dated August 18, 2020 by |
| v. | : | the Berks County Court of Common |
| | : | Pleas, Civil Division, at No. 18- |
| | : | 18627. |
| BERKS COUNTY BOARD OF | : | |
| ASSESSMENT AND WILSON SCHOOL | : | ARGUED:  September 15, 2022 |
| DISTRICT, | : | |
| | : | |
| Appellees | : | |

## OPINION IN SUPPORT OF AFFIRMANCE

**JUSTICE MUNDY**                    **DECIDED:  February 28, 2023**

This appeal by allowance involves a challenge to a school district's method of selecting property assessments for appeal.  We consider whether the use of a monetary threshold for recently-sold properties violates tax uniformity.

Under the Consolidated County Assessment Law (the "Assessment Law"),[1] property owners may appeal their assessments when they believe the property's assessed value is too high.  *See* 53 Pa.C.S. §§ 8844 (relating to administrative appeals to a county assessment board), 8854 (relating to appeals to court).  Taxing districts such

---

[1] Act of Oct. 27, 2010, P.L. 895, No. 93, § 2 (as amended 53 Pa.C.S. §§ 8801-8868).  The Assessment Law is a recodification of several prior acts relating to various classes of counties.  It applies to, *inter alia*, counties of the second class A, as well as counties of the third through eighth classes.  *See* 53 Pa.C.S. § 8801(b).  There is no dispute that, at all relevant times, the Assessment Law applied in this case.

as school districts, *see* 53 Pa.C.S. § 8802 (defining "taxing districts" to include school districts), are correspondingly authorized to appeal the assessment of properties within their boundaries if they believe the assessment is too low. *See id*. § 8855. Although taxing districts have discretion to decide which assessments to appeal, the manner in which that discretion may be exercised is limited by the Uniformity Clause, which states:

> All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

PA. CONST. art. VIII, § 1. For example, taxing districts may not exercise their discretion in a discriminatory manner by targeting only certain types of properties for appeal, *see Valley Forge Towers Apts. N, LP v. Upper Merion Area Sch. Dist.*, 163 A.3d 962, 978 (Pa. 2017) (holding a school district's policy violated the Uniformity Clause where it only appealed the assessments of commercial properties, while not appealing the assessments of other types of properties such as single-family homes), or by targeting only properties owned by persons living outside the taxing district as a way of avoiding political accountability. *See id*. at 979.

In the present case, the Wilson School District, located in Berks County, passed a resolution in 2018 to select certain property assessments in the district against which to lodge an appeal. The resolution established a policy whereby a property would only be selected if: (a) it was recently sold as shown by data provided by the State Taxation Equalization Board (the "STEB"),[2] and (b) it appeared to be underassessed by at least $150,000, that is, the recent sales price times the common-level ratio (the "CLR") (here,

---

[2] The STEB was established by the State Tax Equalization Board Law. *See* 71 P.S. §§ 1709.1500-1709.1521 (formerly 72 P.S. §§ 4656.1-4656.17). Among other functions, it examines local tax assessment records and other public records, and it compiles data showing the prices at which real property in each school district has been sold. *See* 71 P.S. § 1709.1508.

0.685), minus the current assessed value, was at least $150,000.[3] The first criterion was included because the property's fair market value could be readily ascertained as reflected by the sales price. *See Green v. Schuylkill Cty. Bd. of Assessment Appeals*, 772 A.2d 419, 425 n.6 (Pa. 2001) (noting the fair market value is the actual value of the property, defined as the price a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell). The second criterion was included to ensure, in terms of the additional revenue expected from a successful appeal, that the appeal would be worth the cost. The selection criteria did not consider the type or use of the property or the residency status of the owner, and appeals initiated by the School District under the policy have involved industrial, farm, commercial, residential, and apartment complex properties.

The subject property in this matter is the Berkshire Hills apartment complex in Reading, Berks County. The property is located within the School District. It recently sold for $54 million, but its assessed value at that time was $10.5 million, meaning its implied market value was $15.3 million, *i.e.*, the assessed value divided by the CLR.[4] *See Valley Forge Towers*, 163 A.3d at 979 n.10. Hence, it met the selection criteria

---

[3] The CLR is a countywide figure computed each year, *see* 71 P.S. § 1709.1516a(a), which represents the ratio of assessed value to current market value used generally in the county as last determined by the STEB. *See Clifton v. Allegheny Cty.*, 969 A.2d 1197, 1215 & n.26 (Pa. 2009); *Downingtown Area Sch. Dist. v. Chester Cty. Bd. of Assessment Appeals*, 913 A.2d 194, 200 n.8 (Pa. 2006). The STEB computes the CLR using published "statistically acceptable techniques, including sales ratio studies." 71 P.S. § 1709.1516a(b). The CLR utilized in the present case was the Berks County CLR for 2017, which was computed as the arithmetic mean of the individual sales ratios for every sale reported to the STEB by Berks County during calendar year 2017, excluding outliers. *See* 48 Pa. Bull. 3392 (June 2, 2018).

[4] The numbers are approximate. The apartment complex consists of two distinct parcels which are treated individually for assessment and taxation purposes. They are discussed in the aggregate here for simplicity and for consistency with the lower courts' discussions. This approach has no effect on the legal analysis herein.

established by the School District.  The School District therefore lodged an administrative appeal, challenging the $10.5 million assessment and seeking to have it raised.  Responding to the appeal, the county assessment office raised the assessed value to $37 million (the CLR times the sales price).

The property owners, Appellants herein ("Taxpayers"), appealed to the trial court, arguing the School District's policy created a subclassification of properties within the district targeted for appeal, thereby violating the Uniformity Clause.  *See McKnight Shopping Ctr., Inc. v. Bd. of Prop. Assessment, Appeals & Review*, 209 A.2d 389, 392 (Pa. 1965) (recognizing all real estate in the district is the class entitled to uniform treatment).  The court held a hearing at which the School District's financial officer testified the $150,000 threshold was chosen because it is high enough to allow recoupment of appeal costs and low enough to capture properties of all types.  She indicated, as well, that the district only used STEB data because ascertaining fair market value would otherwise require review of private records.  The School District's solicitor testified the district lacks a discovery process to obtain such records.  The district also supplied evidence it had recently appealed properties of many different types.  The trial court noted the School District did not select properties based on their type or classification.  It thus denied relief, holding the district's appeal policy was constitutional.

The Commonwealth Court affirmed in a published decision.  *See GM Berkshire Hills LLC v. Berks Cty. Bd. of Assessment*, 257 A.3d 822 (Pa. Cmwlth. 2021).  The court relied largely on *Valley Forge Towers*, which, as noted, had considered a school district's policy of only appealing assessments of commercial properties, while not appealing assessments of other types of property such as single-family homes.  The school district there claimed it had a neutral motivation:  the greater prospect of recouping appeal costs through enhanced tax revenue from commercial properties.  This Court held that targeting

specific types of property created a subclass of properties within the school district that were subject to differential treatment; the appeal policy was therefore discriminatory in violation of the Uniformity Clause. *See id*. at 978-80 (relying on *Downingtown Area Sch. Dist. v. Chester Cty. Bd. of Assessment Appeals*, 913 A.2d 194 (Pa. 2006), and *Clifton v. Allegheny Cty.*, 969 A.2d 1197 (Pa. 2009)). The *Valley Forge Towers* Court added:

> We pause at this juncture to clarify that nothing in this opinion should be construed as suggesting that the use of a monetary threshold . . . or some other selection criteria would violate uniformity if it were implemented without regard to the type of property in question or the residency status of its owner. Such methodologies are not presently before the Court.

*Id*. at 979 (footnote omitted).

In the present matter, the Commonwealth Court quoted the above passage and observed that, after *Valley Forge Towers* was decided, the Commonwealth Court had approved appeal policies which depended, not on property type, but solely on financial considerations, such as policies where an appeal was triggered by a realty-transfer tax being above a threshold amount, or where a consultant's report listed properties that might be under-assessed by at least a threshold amount. *See GM Berkshire*, 257 A.3d at 831-32 (citing cases). The court recognized Taxpayers here objected to an alleged sub-class of "properties under new ownership." It concluded, however, that the School District's policy rests on a monetary method, which lies within its discretion under *Valley Forge Towers*. The court indicated that, because the School District's method "is purely quantitative in nature, beginning with type-neutral listings of recent sales transactions in the monthly STEB reports, we find it does not present the type of constitutional infirmities present in *Valley Forge Towers*." *Id*. at 834. Thus, the court held the policy does not violate the Uniformity Clause and affirmed the ruling of the trial court. *See id*.

Recognizing this case presents the scenario referred to in the above passage from *Valley Forge Towers* – namely, a taxing district having an appeal policy based on a

monetary threshold which does not discriminate according to property type or use – we allowed further appeal limited to the following issues as stated by Taxpayers:

> Do a school district's selective real estate tax assessment appeals violate the Uniformity Clause of the Pennsylvania Constitution when the school district chooses only recently-sold properties for appeal, leaving most properties in the district at outdated base-year values?

> Do a school district's selective real estate tax assessment appeals violate the Uniformity Clause of the Pennsylvania Constitution when the school district chooses only certain recently-sold properties that would generate a minimum amount of additional tax revenue for appeal, leaving most properties in the district at outdated base-year values?

*GM Berkshire Hills LLC v. Berks Cty. Bd. of Assessment*, 272 A.3d 446 (Pa. 2022) (*per curiam*).

Taxpayers presently highlight that all real estate in a taxing district constitutes a single class and that such districts may not divide properties into subclasses for different treatment. In this respect, they state the Uniformity Clause prohibits a systematic course of disparate treatment for a subset of properties, and this overrides any attempt otherwise to achieve greater uniformity through closer overall adherence to the CLR. As applied here, they contend the School District created a subclass of recently-purchased properties and targeted only those properties for appeal. They add that this subclass was further limited based on market value. Taxpayers additionally criticize the Commonwealth Court for approving a subclass based on economic or "quantitative" factors, pointing out that a property's appearance on a STEB report of recently-sold properties is not a quantitative factor. More generally, Taxpayers maintain a quantitative-versus-qualitative approach is unworkable in practice, suggesting as an example that if a particular neighborhood has experienced greater than average growth, an appeal policy targeting that neighborhood cannot be deemed purely quantitative or purely qualitative. Taxpayers forward a slippery-slope argument, positing that the intermediate court's ruling will allow

for future subclasses based on factors such as property value, square footage, number of residents, number of parking spaces, age of improvements, size of carbon footprint, and the like.

Taxpayers are correct that all properties in a particular taxing district lie within a single class to be treated uniformly, and that taxing districts may not carve out subclasses for discriminatory treatment. *See Appeal of F.W. Woolworth*, 235 A.2d 793, 795 (Pa. 1967). But taxing districts are statutorily authorized to appeal tax assessments, and they cannot reasonably appeal every property within their borders. As a consequence, they must be selective in deciding which properties to appeal, and any time a property is chosen for appeal the owner is likely to feel he or she is being subject to discriminatory treatment because neighboring properties have been left alone. That is a non-trivial concern which is potentially material under the Uniformity Clause. *See Downingtown*, 913 A.2d at 201 (acknowledging there is "substantial leeway for potential discrimination by local officials among similarly situated property owners who are underrepresented in the general population").

There are at least two ways tax uniformity can be undermined when a taxing district appeals the assessment of an individual property. The first and most obvious way arises from the fact that one property's assessment is subject to review and adjustment while other properties in the same taxing district are not. As we explained in *Downingtown*, after a countywide reassessment, "under normal economic conditions the STEB-calculated CLR tends to diminish each year, reflecting ongoing inflation and real estate appreciation." *Downingtown*, 913 A.2d at 203. If, during that process, one property's assessment is appealed and raised to its fair market value, or, more precisely, its fair-market-value times the established predetermined ratio ("EPR"), while a neighboring property remains unchallenged, non-uniformity can result. This is a realistic possibility

where the CLR varies from the EPR by fifteen percent or less, as the Assessment Law indicates that in that scenario the EPR is to be used as a multiplier instead of the CLR:

> The [common pleas] court, after determining the market value of the property . . ., shall then apply the established predetermined ratio to that value unless the corresponding common level ratio . . . varies by more than 15% from the established predetermined ratio, in which case the court shall apply the applicable common level ratio to the corresponding market value of the property.

53 Pa.C.S. § 8854(a)(3). *See generally Downingtown*, 913 A.2d at 202 n.13 (discussing fractional assessment using the EPR). In *Downingtown* we considered this provision as it appeared in the now-replaced Second Class A and Third Class County Assessments Law, and we described it as "an internal, systemic defect" arguably rendering the scheme unconstitutional on its face because, "as a mere consequence of the lodging of an assessment appeal, the benefit of equalization that is otherwise required" is lost over a thirty-percent range of deviation between the CLR and the EPR. *Downingtown*, 913 A.2d at 202. In the present case, however, non-uniformity has not arisen in this manner because, as mentioned, the fair market value of the subject property was multiplied by the CLR rather than the EPR, presumably because the CLR deviated from the applicable EPR by more than fifteen percent.[5]

---

[5] The CLR was traditionally determined by the county court based on expert testimony consisting of statistical analyses regarding the percentage of market value at which other properties were generally assessed throughout the taxing district. *See, e.g.*, *Woolworth*, 235 A.2d at 795; *Appeal of Mass. Mut. Life Ins. Co.*, 235 A.2d 790, 791 (Pa. 1967); *In re Brooks Bldg.*, 137 A.2d 273, 276 (Pa. 1958). Its computation was later formalized through statutory law. *See supra* note 3. Uniformity is enhanced when individual assessment ratios within a taxing district are brought into line with the CLR because then each property is taxed on the same percentage of its value. *Accord Woolworth*, 235 A.2d at 795 (observing uniformity "has as its heart" the equalization of the ratio among all properties in a taxing district). As a consequence, we have expressed that adjusting the assessed value of the subject property to conform with the CLR "is the essence of equalization, and thus, uniformity." *Downingtown*, 913 A.2d at 200.

The second way non-uniformity can arise is through a taxing district's property-selection policy. That situation came into focus in *Valley Forge Towers*, where the school district selected properties for appeal based on property type. The district decided to appeal only commercial properties ostensibly because those properties' values were higher than the values of single-family homes, and hence, raising their assessments would result in a greater tax-revenue increase than doing the same with under-assessed single-family homes, including single-family homes which were under-assessed by a greater percentage. *See Valley Forge Towers*, 163 A.3d at 966. As noted, that approach was disapproved as inconsistent with the Uniformity Clause. We explained that, although the judicious use of public funds is a valid governmental objective, it may not be pursued by dividing the property within a taxing district into sub-classifications. *See id*. at 980 ("Where there is a conflict between maximizing revenue and ensuring that the taxing system is implemented in a non-discriminatory way, the Uniformity Clause requires that the latter goal be given primacy.").

It does not follow, though, that the Uniformity Clause precludes any and all efforts by taxing districts to select properties to appeal. Otherwise, it would prohibit a subclass described simply as "the properties selected by the taxing district for appeal." That, however, would be in substantial tension with our prior observation that, generally speaking, the particular appeal policy utilized by a taxing district lies within its discretion. *See Valley Forge Towers*, 163 A.3d at 980; *see also id*. at 977 ("There are other, nondiscriminatory, methods of deciding which properties to appeal."). It would also undermine uniformity because then property owners would be able to lodge appeals to reduce their assessments, but an aggrieved taxing district would not be able to seek an increase in a property's assessment through the statutory appeal process even where

that property's assessment ratio (its assessed value divided by its market value, *see Valley Forge Towers*, 163 A.3d at 966 n.1) was well below the CLR.

What the Uniformity Clause does prohibit is the systemic differential treatment of a subclass of property defined, for example, by property type or residency status of the owner (*Valley Forge Towers*), or by neighborhood (*Clifton*).[6] These types of factors are prohibited because their use creates property subclasses. Use of monetary figures and recent sales data is qualitatively different. Every property in a given taxing district can be bought and sold, and when that occurs a sales price is associated with the property. A sales price thus has two features making its use consistent with uniformity: it is not unique to one subset of property within the district; and as long as the transaction is undertaken at arm's length, it reflects the property's fair market value, an important piece of evidence in determining whether the property's assessment ratio varies widely from the norm. The recently-sold status of the property is also different from other characteristics because, unlike property type or use, fresh valuation data is not arbitrary but is directly connected to the ability to gauge whether the parcel's assessment is non-uniform.

Here, the School District seeks to take into consideration the real-world costs of lodging an assessment appeal, together with the practical limitations on the information available to it concerning the fair market values of the properties within its borders. It therefore selects properties where it possesses the necessary information to determine, first, that a particular assessment is too low, by virtue of the STEB's report on recent

---

[6] In *Clifton*, no government policy expressly discriminated by neighborhood. Rather, the county's long-term use of the base year system without periodic reassessment led to a situation where the properties in some neighborhoods developed different assessment ratios than those in other neighborhoods. *See Clifton*, 969 A.2d at 1208, 1222. This Court determined the statutory scheme as applied in that manner led to such pervasive disparities as to violate uniformity. *See id*. at 1227-29. There is no suggestion in the present case that that type of non-uniformity is present within the School District.

arm's-length real estate sales, and second, that the extra tax revenue expected from an appeal will make the appeal cost-effective to the School District.

There is nothing in our decisional law that prohibits this type of methodology, and *Valley Forge Towers* strongly suggested the Uniformity Clause would permit it. In this regard the School District's policy does not create a prohibited sub-class of properties defined by an impermissible characteristic such as type, use, neighborhood, or residency status of the owner; it tends to enhance uniformity by selecting for appeal the most non-uniform properties about which reliable information is readily available; and it represents an effort to use public funds responsibly. *See Valley Forge Towers*, 163 A.3d at 980 (stressing that maximizing revenue and ensuring non-discriminatory implementation of the taxing system do not necessarily conflict); *accord Kennett Consol. Sch. Dist. v. Chester Cty. Bd. of Assessment Appeals*, 228 A.3d 29, 41 (Pa. Cmwlth. 2020) ("Here, the District was using a monetary threshold only for the purpose of making prudent fiscal decisions, and *not* for the purpose of discriminating against sub-classes of properties."), *appeal dismissed*, 259 A.3d 890 (Pa. 2021); *Weissenberger v. Chester Cty. Bd. of Assessment Appeals*, 62 A.3d 501, 506 (Pa. Cmwlth. 2013) ("Judicious use of resources to legally increase revenue is a legitimate governmental purpose."). This, in turn, enhances fairness to the remaining taxpayers in the taxing district who would otherwise have to pay more of the cost of government than their proportionate share, as the taxing district would otherwise have to raise its millage rate to meet budgetary needs. *See Clifton*, 969 A.2d at 1228; *see also Deitch Co. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cty.*, 209 A.2d 397, 401 (Pa. 1965) (stating that taxpayers should pay neither more nor less than their proportionate share of the cost of government).[7]

_____

[7] We offer no opinion regarding other hypothetical criteria proffered by Taxpayers relating to such items as square footage, number parking spaces, and number of residents. *See* (continued…)

Contrary to the assertion in the lead Opinion in Support of Reversal (OISR), *see* OISR at 5 (Donohue, J.), we do not here endorse a quantitative-versus-qualitative test as the Commonwealth Court apparently set forth. *See GM Berkshire Hills*, 257 A.3d at 834. Nothing in this opinion, for example, suggests that a policy under which a taxing district selects properties at random would violate uniformity, although that policy would not be based on quantitative factors.

We also respectfully disagree with the OISR's contention that we "cannot explain in a principled way" how the factors utilized by the School District are different from impermissible ones such as property type or use. OISR at 7 (Donohue, J.). The difference is that the criteria used here focus in on those properties, regardless of type or use, which are demonstrably among the most non-uniform in the taxing district. In that contention and in others, the OISR overlooks that the selection policy does not solely target recently-sold properties, but further limits such properties to those whose assessments are the most non-uniform. *See, e.g., id.* at 7 (describing the alleged

---

*generally D.P. v. G.J.P.*, 146 A.3d 204, 217 (Pa. 2016) (noting our adjudicatory process is structured to cast a narrow focus on matters framed by litigants before the Court in a highly directed fashion, and, as such, we sit to decide concrete cases).

Separately, Taxpayers' *amici*, the National Association of Property Tax Attorneys, *et al.*, posit non-uniformity will result if two neighboring taxing districts have different monetary thresholds. *Amici* note this could lead to adjacent identical properties, one in each taxing district, having non-uniform assessments because one taxing district lodges an appeal and the other does not. Before this Court, however, is the School District's policy aimed at reducing non-uniformity within its borders. Even assuming (without deciding) that uniformity is required across multiple taxing districts, if other districts use the tools supplied by the Assessments Law in a less effective or vigilant manner than the School District, that does not impact upon the constitutional validity of the School District's methodology.

*Amici* also query whether monetary thresholds constitute a pretext for targeting only commercial properties and should be disapproved on that basis. As that issue is not before us, its resolution must await a future dispute.

subclassification as "newly-purchased" properties); *id*. at 8 (accusing the School District of focusing exclusively on a property being "newly purchased").

The OISR also implies a taxing district which appeals a certain property's assessment must also appeal all "similar" or "comparable" properties in the district. *Id*. at 8. The Uniformity Clause has never been interpreted to embrace such a requirement. Moreover, even if it were possible to provide a judicial standard for "comparability" or "similarity" under the Uniformity Clause, which is doubtful, a mandate along those lines would sweep in properties whose assessment ratios are already at or near the CLR, or even higher than the CLR. In such cases the taxing district would not be aggrieved by the assessment and thus would have no reason (or possibly standing) to appeal it.[8]

For their part, Taxpayers point out that counties may only reassess properties between countywide reassessments where the property has been subdivided or improved or has otherwise been physically changed. *See* 53 Pa.C.S. § 8817(a); *see also id*. § 8843 (prohibiting the county assessment office from engaging in spot reassessment). They argue the Commonwealth Court's ruling creates a "constitutional loophole" whereby one

---

[8] Applying the OISR's logic to those other properties could lead to cascading iterations of new rounds of comparable or similar properties being appealed. Depending how flexible the judicial standard for similarity is, the end result might be that a substantial portion of all properties in the district would have to be appealed to make the initial appeal constitutionally valid – a result we find untenable.

Overall, the OISR posits that the School District's policy of conforming the assessment ratios of the most non-uniform properties to the CLR will result in "a citizen ha[ving] no reason to feel that he is bearing his proportionate share of the tax burden[.]" *Id*. at 2. As we have highlighted, however, conformance to the CLR is the very "essence of equalization, and thus, uniformity." *Downingtown*, 913 A.2d at 200; *see supra* note 5. It therefore appears the OISR has it backwards: conforming those properties to the CLR should give the owner and other citizens alike confidence that all involved are bearing their fair share of the cost of government.

state actor (the taxing district) may spot reassess a recently-sold property although another state actor (the county) may not. Brief for Appellants at 21-22.

Taxpayers in effect state that, if the county assessment authorities must stay their hand until they are prepared to reassess the whole county, as a matter of common sense the subsidiary taxing districts should have to do likewise. The simple answer is that the Assessment Law does not impose such a restriction. For one, and as already noted, the enactment expressly gives taxing districts the right to appeal assessments individually. Also, the statute prohibiting spot reassessment clarifies that a change in an assessment occasioned by an appeal initiated by a taxpayer or taxing district "shall not constitute a spot reassessment." 53 Pa.C.S. § 8843. Thus, if a "loophole" exists, it was created by the General Assembly, not the courts.

It is certainly understandable, as discussed, that Taxpayers feel they have been subjected to non-uniform treatment because many other properties within the School District have not been appealed, whereas Taxpayers have had to defend an appeal and have suffered an increase in assessment. *See generally Delaware, L. & W.R. Co.'s Tax Assessment*, 224 Pa. 240, 243, 73 A. 429 (1909) ("While every tax is a burden, it is more cheerfully borne when the citizen feels that he is only required to bear his proportionate share of that burden measured by the value of his property to that of his neighbor."). We reiterate, though, that the subject property's valuation has been raised so that its assessment ratio conforms with the CLR. It has not been raised to the purchase price of the property, which was $54 million. Unless there is a systemic deficiency where the CLR does not in fact represent the average assessment ratio of the properties in the district, the subject property's assessment has been adjusted to become as uniform as possible with the properties in the district as a whole. The validity of the CLR, which may be

challenged by taxpayers and political subdivisions alike, *see* 71 P.S. § 1709.1516a(c), is not at issue in this dispute.[9]

Finally, Taxpayers highlight the longstanding uniformity principle that the government may not make the *rate* of a tax to depend on the *quantity* (or value) of the item being taxed. *See* Brief for Appellants at 23-33. That precept has led this Court over the past century and a quarter to invalidate a number of different taxing schemes. *See, e.g.*, *Cope's Estate*, 43 A. 79 (Pa. 1899) (inheritance tax statute that exempted the first $5,000 of estate property from taxation); *Kelley v. Kalodner*, 181 A. 598 (Pa. 1935) (graduated-rate income tax).[10] However, Taxpayers do not identify any facet of the School District's real estate tax that would constitute a fatal defect similar to the ones we have disapproved. They do not claim, for example, that any part of a parcel's value is exempt from taxation, or that the School District applies a different millage rate depending on the parcel's value. *See* Brief for Appellee at 29 (suggesting Taxpayers confuse a tax *rate* with a tax *base*). The argument seems to be that the School District acted improperly

---

[9] The record does not contain data suggesting the CLR, a countywide figure, deviates from the average assessment ratio in the School District. Variances of this nature could be problematic when enforcing uniformity across the county as a whole as well as within individual taxing districts simultaneously. Any difficulty along these lines is beyond the scope of the questions presented.

[10] *See also Saulsbury v. Bethlehem Steel Co.*, 196 A.2d 664 (Pa. 1964) (occupational privilege tax which applied only to persons earning at least $600 annually); *Amidon v. Kane*, 279 A.2d 53 (Pa. 1971) (facially flat personal income tax where the amount of income taxed depended on federal rules under which individual taxpayers could exempt different portions of their incomes); *Mount Airy #1, LLC v. Dep't of Revenue*, 154 A.3d 268 (Pa. 2016) (slot machine gross terminal revenue (GTR) tax where one effective rate applied to casinos with GTR over $500 million and a different effective rate applied to other casinos); *Nextel Commc'ns v. Dep't of Revenue*, 171 A.3d 682 (Pa. 2017) (provision which, when applied to corporations having a net-loss carryover greater than or equal to their net income for a particular year, allowed only corporations with net income of $3 million or less to avoid taxation completely).

by targeting Taxpayers' property because of its high value, while electing not to appeal other recently-sold properties within the School District because they are of lower value.

That is another way of articulating the previous argument that the selection criteria are discriminatory. The position, as noted, would have greater force but for application of the CLR. Whenever an assessment appeal is lodged by a taxing district, the district's central litigation position is that the assessment as it exists is too low to accurately reflect the value of the property, taking into consideration the assessment ratios currently prevailing in the district as a whole. As long as the fair market value as determined by the court, *see* 53 Pa.C.S. § 8854(a)(2), is multiplied by the CLR before the millage rate is applied, the appeal is fundamentally aimed at equalizing the targeted property's assessment ratio with those otherwise prevailing in the district. As we expressed in *Valley Forge Towers*, even this salutary purpose cannot be accomplished through discriminatory means. But we would conclude, for the reasons given above, that the School District's means are not discriminatory but neutral.[11]

---

[11] In supporting reversal Justice Dougherty takes issue with the concept that conforming property assessments to the CLR enhances uniformity, *see* OISR at 4, notwithstanding that this Court has repeatedly affirmed that it does. *See Downingtown*, 913 A.2d at 200 (expressing that adjusting the assessed value of a property to conform with the CLR "is the essence of equalization, and thus, uniformity"); *Woolworth*, 235 A.2d at 795 (stating "uniformity has at its heart the equalization of the ratio among all properties in the district"). To support his contention, Justice Dougherty quotes a sentence fragment from *Clifton* stating "the CLR is not indicative of uniformity." *Clifton*, 969 A.2d at 1216. The context of that statement proves the opposite of his position: the point made in *Clifton* was that, if assessment ratios vary widely from the CLR, thus leading to a large coefficient of dispersion (COD), then the CLR as a mathematical number does not alone say anything about uniformity. Here, the School District's policy is aimed at conforming outlying assessment ratios to the CLR, and it thereby emphatically *does* promote uniformity as it lowers the COD. This is not a matter of legal opinion but simple mathematics. To the extent Justice Dougherty suggests the School District's policy violates uniformity *because* it targets outlier assessments for correction (a process that cannot help but improve overall uniformity), *see* OISR at 5, such a conclusion seems counterintuitive.

(continued…)

We realize that, because not all assessments in the district are appealed, and not all real property appreciates at the same rate, some variance in assessment ratios will occur every year after the base year until the next countywide reassessment. During that time, disparities can be heightened by such factors as population shifts, natural disasters, property development, property decay, and changes in property use. Still, in the present context, the Uniformity Clause only requires "rough uniformity," *Beattie v. Allegheny Cty.*, 907 A.2d 519, 530 (Pa. 2006), that is, uniformity as nearly as practicable "in view of the instrumentalities with which and subjects upon which tax laws operate." *Nextel*, 171 A.3d at 696 (quoting *Clifton*, 969 A.2d at 1210). If pronounced inequalities become pervasive, relief compelling a countywide reassessment may be available. *See, e.g.*, *Clifton*, 969 A.2d at 1231; *City of Lancaster v. Cty. of Lancaster*, 599 A.2d 289, 301 (Pa. Cmwlth. 1991); *Millcreek Twp. Sch. Dist. v. Cty. of Erie*, 714 A.2d 1095, 1109 (Pa. Cmwlth. 1998); *Ackerman v. Carbon Cty*, 703 A.2d 82, 89 (Pa. Cmwlth. 1997). In the interim, assessment appeals tending to enhance uniformity do not otherwise violate the Uniformity Clause so long as they are undertaken based on neutral factors such as those used by the School District in this matter.

Accordingly, we would affirm the order of the Commonwealth Court.

Justices Wecht and Brobson join this opinion in support of affirmance.

More generally, Justice Dougherty's complaint seems to be that individual appeals do not enhance uniformity as much as a comprehensive reassessment of all properties in the county. *See id*. at 5-6. This argument would apply similarly to appeals initiated by property owners in an attempt to lower their assessments, which have never been deemed constitutionally suspect. Regardless, even if we assume that the best solution, were it feasible, would be to reassess the entire county every year, it does not follow that more limited efforts at enhancing uniformity in the interim violate the Uniformity Clause. And under Justice Dougherty's reasoning, it is somehow more consistent with uniformity to allow Taxpayers here to continue to pay only 28 percent of their fair share of the cost of government, foisting the remaining costs onto others, rather than require them to pay their fair share as measured by the average assessment ratio in the taxing district.